### JACKSON *v.* LADY.

Opinion delivered November 17, 1919.

1. DEEDS — CONSTRUCTION. — Deeds are construed most strongly against the grantor and in favor of the grantee.

2. SAME—SAME.—A deed must be so construed that all of its parts may be harmonized and stand together, if the same can be done, and yet carry out the manifest intention of the parties.

3.  SAME—SAME—INTENTION OF PARTIES.—Endeavoring to ascertain
    the intention of the parties, the court will look not only to the con-
    tents of the deed, but will consider the relation of the grantor
    to the property conveyed.

4.  SAME—SAME—SAME.—Intention is to be gathered from the whole
    instrument, and not from praticular clauses, but in case of re-
    pugnancy between the granting and habendum clauses, the
    former will control the latter so as not to defeat the grant.

5.  SAME—SAME—GRANTING CLAUSE.—If the language of the granting
    ing clause is so plain that it can not be misunderstood, then
    there is no room for construction, and other clauses must har-
    monize with or yield to it.

6.  SAME—SAME—HARMONIZING CLAUSES.—The above rule never ap-
    plies when reconcilement between the clauses is possible upon
    consideration of the whole instrument, so as to carry out the
    grantor's intention.

7.  SAME—SAME—AMBIGUITY.—If there is any ambiguity or uncer-
    tainty as to the intention of the parties, when the instrument is
    considered as a whole, then the court may consider in connection
    with the instrument a bond for title, when the deed itself or the
    extraneous facts show that the deed was executed in compliance
    with the bond.

8.  DEEDS—BOND FOR TITLE—MERGER.—As a general rule, a deed
    made in execution of a contract for the sale of land merges the
    provisions of the contract therein, and all prior negotiations lead-
    ing up to the execution of the deed.

9.  DEEDS — CONSTRUCTION — AMBIGUITY — BOND FOR TITLE.—When a
    deed is so ambiguous as to require construction, a bond for title
    previously executed by the parties to the deed, may be considered
    in determining the question of intention, and to explain any un-
    certainty or ambiguity in the deed.

10. DEEDS—AMBIGUITY IN DESCRIPTION—INTENT.—In an action to quiet
    title to land, based upon a deed describing it as "part of the
    S. E. N. W. 9.23 A., section 21, township 16 north, range 1
    west," evidence *held* sufficient to support a finding that the grant-
    ors intended thereby to convey certain described lands, justify-
    ing a decree covering such lands.

Appeal from Lawrence Chancery Court, Eastern
District; *Lyman F. Reeder,* Chancellor; affirmed.

*W. A. Cunningham,* for appellant.

1.  The will of Henson Kenyon gave the fee title to
Emeline Owens and the limitation over in case of her

death without issue was void; the deed to Lady was only sufficient to pass any title which she may have had at the time the deed was executed and would not pass after-acquired title; all transactions between the parties prior to the deed were merged in the deed and could not avail by estoppel or otherwise. Under the granting and habendum clauses of Kenyon's will Emeline Owens took a fee title. All the words necessary to convey the fee were used, the word "heirs" clearly giving an estate of inheritance and the words "assigns forever" expressing the intention that the estate should be unlimited as to duration. There are two well established rules of construction of wills: (1) that the intention of the testator shall be gathered from the whole instrument, and (2) that where a fee is granted (as here) with absolute power of disposal in the first taker any limitation over the remainder is void because repugnant to the existence of the preceding fee. 40 Cyc. 1585; 108 Pac. 88; 110 *Id.* 276; 20 Am. St. 409; 24 *Id.* 656; 81 Ark. 480; 82 *Id.* 209. The wording of the will here comes clearly within the rules. The title did not pass to Lady under Kirby's Digest, sections 731-734.

2. The subsequent title acquired did not pass by the deed from Phelps and wife to Lady. The chancellor failed to distinguish between the substance and the shadow. The deed was a quitclaim deed and after acquired title does not pass by it a quitclaim deed. 76 Ark. 417; 94 *Id.* 306; 72 *Id.* 80; 1 Devlin on Deeds, 43; 2 *Id.* 1571.

3. The description in the deed under which Lady claims is not a sufficient description to convey the land. It is too uncertain to even cast a cloud upon the title. 117 Ark. 151. On the whole case the chancellor erred in dismissing the complaint and in decreeing title in appellee. Cases *supra*.

*W. M. Ponder* and *Ponder & Gibson,* for appellees.

1. Under the devise to Mrs. Owens an estate tail at common law was created in Mrs. Owens, which under sec-

tion 735, Kirby's Digest, operated to vest a life estate in Mrs. Owens, with the remainder over in fee simple to the person such estate would have first passed to according to the course of the common law and, Mrs. Owens never having had any bodily heirs and dying without issue, the remainder vested in Victoria Phelps.. and Mary Vinson, which remainder passed under the deed from Mrs. Phelps to Lady, the defendant. Regardless of whether Mrs. Phelps took under the will or by inheritance, the deed to Lady, being in legal effect a warranty deed, operated to vest in Lady all the title Mrs. Phelps had at the time the deed was executed or all title afterwards acquired, and, on account of the facts pleaded and proved, the plaintiff is estopped to maintain the suit. All portions of a will must be harmonized and no portion treated as surplusage. 51 Atl. 865; 95 Ark. 333; 115 Ark. 400; 400 *Id.* 445. Mrs. Owens certainly took the fee under the will. 2 Ark. 583; 2 Howard 43; 11 S. E. 172; 51 Atl. 865, 540; 40 Cyc. 1382; 115 Ark. 400; 104 *Id.* 445. Where land is devised by a will by words importing a fee, the fee may be cut down to a lower estate by other portions of the will showing such an intention of the testator. 52 Atl. 340; 57 *Id.* 178; 52 Pa. St. 257; 115 Ark. 400; 40 Cyc. 1577, and cases cited; 6 N. J. Eq., *Kent* v. *Armstrong;* 127 N. W. 26; 15 So. Rep. 644; 31 Atl. 501; 35 *Id.* 357; 39 *Id.* 420; 45 *Id.* 395; *Ib.* 945; 76 *Id.* 661; 10 *Id.* 577; 75 Ga. 540; 102 Tex. 376; 117 S. W. 425; 132 Am. St. 886; 112 Am. St. 182; 27 L. R. A. (N. S.) 1047; 3 Am. Dec. 24; 119 S. W. 800; 122 *Id.* 159.

The word "provided" indicates an intention to give contingently. 51 Atl. 865. The cases cited for appellant do not apply. From the above cases it is clear that the intention of the testator that Emeline Owens should take nothing except a life estate. See also 115 Ark. 400; 104 *Id.* 445; 95 *Id.* 333.

2. Under the devise to Mrs. Owens an estate tail was created under section 735, Kirby's Digest, and carried only a life estate, remainder over to the person to

whom such estate would pass according to common law, and she dying without issue the remainder passed to Victoria Phelps and Mary Vinson, with remainder (as to Mrs. Phelps) which passed under the deed to Lady.

The estate devised was an estate tail. 52 Atl. 340; 57 *Id*. 178; 13 Am. Rep. 592; 78 Am. Dec. 399; 40 Cyc. 1595-6; 44 Ark. 458; 67 *Id*. 516; 117 *Id*. 24; 98 *Id*. 570; 78 *Id*. 336; 117 *Id*. 366; 75 *Id*. 19; 116 *Id*. 233; 40 Cyc. 1502; 110 Ga. 707; 50 L. R. A. 216. See also 40 Cyc. 1597-9; 95 Ark. 333; 71 N. J. Eq. 626; 64 Atl. 460; 70 N. H. 152; 46 Atl. 1053; 63 N. H. 445-460; 3 Atl. 625; 14 *Id*. 73; 45 *Id*. 576. A remainder may be vested subject to be divested on the death of the first taker having children or on birth of issue of another. 16 S. W. 346; 98 Ark. 570; 116 Ark. 233.

The deed form Mrs. Phelps to Lady was a warranty deed, in effect, and vested in Lady all the title Mrs. Phelps had or afterwards acquired. Cases *supra;* Kirby's Digest, § 734; 5 Ark. 693; 33 *Id*. 251; 15 *Id*. 73; 84 *Id*. 527; 95 *Id*. 253; 27 *Id*. 523; 3 *Id*. 18; 15 *Id*. 703; 93 *Id*. 5; 55 *Id*. 104. The legal effect of the deed was to convey a fee simple title by warranty deed. 18 C. J. 268; 22 Col. 28; 1 Cowen 613; 3 Paige, Chy. 254; 141 Pa. St. 390; 13 Cyc. 614-15.

When the title bond was executed an equitable title was created in Lady. 44 Ark. 196; 100 *Id*. 544.

3. Plaintiff is estopped to maintain the suit. 116 Ark. 233; 40 Me 24; 3 Metcalf 121; 70 Ky. Rep. 259; 59 Ind. 39; 23 S. E. 523. On the whole case the decree is right and should be affirmed.

*W. A. Cunningham,* for appellant, in reply.

Cites 127 N. W. 26; 15 So. Rep. 644; 123 N. W. 299; 117 S. W. 425; 35 Atl. 987; 39 Atl. 987; *Ib.* 359; 77 N. E. 458. There is no repugnancy between the granting and habendum clause. 94 Ark. 117. See also 131 Ark. 134. See also 13 Cyc. 608. The deed was only intended as a release of any claim Victoria Phelps had in the lands of her sister and was not intended as a conveyance of title.

WOOD, J. This action was instituted by Mary F. Jackson and Victoria Phelps against the appellee in the chancery court of Lawrence County on the 2nd of October, 1917.

The plaintiffs alleged that they were the owners in common of certain tracts of land in Lawrence County which they described in their complaint and which contained in the aggregate 89.26 acres more or less. They alleged that their father, Henson Kenyon, devised the land described to Emeline Owens who immediately upon the death of her father entered into the possession and remained in possession of the lands until her death; that at her death the plaintiffs entered into possession of the same claiming to be the owners thereof by inheritance from their sister; that the defendant, Lady, claiming to have some kind of title or interest in the lands had attempted to enter upon the same and was now threatening by force or stealth to enter upon the lands for the purpose of taking possession thereof. They prayed that the defendant be enjoined and that their title be quieted.

The defendant answered, admitting that Henson Kenyon was the father of the plaintiffs and that he had executed a will as set up in the complaint and that he had died. He admitted that Emeline Owens, later Lady, later Bush, had died, but he denied that plaintiffs were her sole heirs at law and denied that plaintiffs had entered into possession of the lands claiming it as the heirs of their sister. He admitted that Emeline Owens went into the possession of the land after her father's death, but denied that her possession was adverse to him.

He alleged that in the year 1870 J. M. Phelps and Henson Kenyon were in business as partners; that Kenyon died in 1877, never having settled the partnership accounts and that Phelps brought suit against his administrator and heirs for $8,100; that defendant, who had in the meantime had married Emeline Owens, and J. M. Phelps, the husband of Victoria Kenyon, settled the lawsuit after the same had been discussed by all the parties and the desire had been ex-

pressed by them for such settlement; that by this settlement defendant contracted to buy the lands devised to Victoria Phelps by her father, including the lands in controversy and 60 acres more which had been devised to Emeline Owens; that in pursuance of the agreement Phelps and his wife Victoria on October 28, 1884, executed their bond for title, which was made an exhibit to the answer, and defendant executed notes in the sum of $3,600, the purchase money, as the consideration of the settlement; that Phelps was to dismiss and did dismiss the lawsuit; that afterwards the defendant carried out the settlement on his part by making full payment of all the notes, and that Phelps and Victoria Phelps by their warranty deed duly conveyed to the defendant all the lands embraced in the settlement including the lands in controversy; that the deed from Phelps and wife was executed in pursuance of the terms of the title bond and for the purpose of giving force and effect thereto; that, by virtue of the execution of the instruments and the death of Emeline Bush, without bodily heirs, the defendant became the owner in fee of the undivided one-half interest in the lands in controversy and is entitled to the possession thereof.

Defendant further alleged that the heirs of Henson Kenyon who were living at the time of the above settlement and of the execution of the bond for title and deeds in pursuance thereof were fully advised of the purposes of the settlement which resulted in the dismissal of the lawsuit, and that by reason of the execution and delivery of the title, bonds, and deeds and settlement of the lawsuit and family dispute they are in equity and good conscience estopped from making any claim to the lands in controversy.

The defendant prayed that plaintiffs be denied the relief sought; that the lands be partitioned; that his title be quieted; and "for all other proper, general and specific, legal and equitable relief."

After the institution of the suit Victoria Phelps died intestate, leaving Mary F. Jackson her co-plaintiff

and sole heir at law and in whose name the cause was revived and proceeded to trial.

The cause was heard upon the pleadings and the exhibits thereto and upon depositions, and the court found that the defendant was the owner and entitled to the possession of the undivided one-half interest of that part of the S. E. ¼ of the N. W. ¼, section 21, township 16 north, range 1 west, lying south and east of the private survey No. 36 and containing 9.26 acres, more or less, and the S. ½ of the N. E. ¼ of section 21, township 16 north, range 1 west, containing 80 acres, more or less.

The court entered a decree dismissing the complaint for want of equity and in favor of the defendant according the above finding, from which decree is this appeal.

The facts are substantially as follows: Henson Kenyon died in 1877, leaving a will by which he divided his lands, amounting to 445 acres, among his three daughters, Emeline Owens, Mary F. Vinson and Victoria Phelps. The devise to Mrs. Owens contained the clause, "to have and to hold the same to her the said Emeline Owens, and unto her heirs and assigns and to their proper use and behoof forever; provided, however, that if the said Emeline Owens should die leaving no bodily heirs the above lands to revert to her sisters, Victoria Phelps and Mary Vinson or to their heirs." The lands devised to Emeline consisted of 146.26 acres.

Appellee in 1881 married Emeline Owens, formerly Kenyon. At the time of this marriage a lawsuit was pending between J. M. Phelps and the estate of Kenyon in which the administrator and heirs of Kenyon were made parties defendant.

J. M. Phelps had married Victoria Kenyon. Phelps and Kenyon had been engaged in a partnership business. For some reason Phelps left the State and during his absence Kenyon died. On Phelps' return to the State he claimed that on an accounting of the partnership business the estate of Kenyon was due him a balance of $8,-100 and this claim was disallowed by the administrator and Phelps instituted a suit in the chancery court to recover that amount.

The appellee testified that this suit was discussed frequently among the Kenyon heirs. They desired a settlement. Two or three years after the appellee's marriage with Emeline the suit was settled by appellee and Jim Phelps. It was understood between Phelps and the appellee that if the appellee would buy out the interest of Phelps' wife in the estate he would dismiss the suit. By the terms of the settlement and agreement Phelps was to buy 60 acres of the land which had been willed by Kenyon to his daughter Emeline and deed the same to the appellee. Appellee was to pay $3,600 as the consideration and was to get 180 acres of land that belonged to Victoria Phelps individually in addition to the 60 acres that had been willed by Kenyon to his daughter Emeline, and also the undivided one-half interest of Mrs. Phelps in the other land devised by Kenyon to his daughter Emeline, which it was supposed belonged to Mrs. Phelps at Emeline's death.

Concerning the 60 acres the understanding was that the appellee was to get an immediate fee title and hence a deed to this 60 acres was executed to Phelps by appellee and his wife and by Mary Vinson and her husband, E. A. Vinson. The reason this was done they considered that all the land devised to Emeline belonged to her for her life and at her death it went to her two sisters. The two sisters signed the deed to Phelps in order that when he signed the deed to appellee, appellee would have the fee title to all the lands owned by Victoria Phelps, including the 180 acres willed to her in her own right and the one-half interest in remainder which they supposed she had in the lands devised to her sister Emeline for life.

On the same day that the deed to the 60 acres was executed by Emeline Lady and the appellee and Mary Vinson and her husband to Phelps, Phelps and his wife executed a bond for title to all the lands covered by the agreement except the 60 acres.

The bond for title recited that, in consideration of the sum of $3,600 evidenced by promissory notes to be

paid by H. L. Lady, in four installments of $900 each, to
J. M. Phelps and Victoria Phelps, the latter upon the
payment of said notes "would make and execute to him,
Lady, a good and sufficient deed of conveyance" to the
lands described in the bond. Among other lands de-
scribed in the bond are the lands in controversy. The
deed to the 60 acres was of date October 21, 1884, and the
bond for title was dated October 22, 1884.

Appellee paid the notes and there was executed to
him a warranty deed, of date September 30, 1889, by J.
M. Phelps and Victoria Phelps. This deed recites that,
"We, James M. Phelps and Victoria Phelps, his wife, for
and in consideration of the sum of $3,600 paid and to be
paid to us by H. L. Lady do by these presents bargain,
sell, and convey to H. L. Lady the following lands lying
in Lawrence County, Arkansas, viz. Then, after describ-
ing certain lands, is this further recital: "Whatever in-
terest the said Victoria Phelps may have in part of the
S. E. of the N. W. (9.23 A.) and the S. ½ of the N. E. ¼
of section 21, township 16 north, range 1 west. The last
five tracts being the sole property of the said Victoria
Phelps and which she conveys as *feme sole.*" Then fol-
lows the habendum, "to have and to hold the same to the
said H. L. Lady and to his heirs and assigns forever,"
and a covenant, "to warrant and defend the title to said
land to him against the lawful claims of all persons
whomsoever."

After the appellee's purchase of the land in contro-
versy no claim was made thereto by Victoria Phelps un-
til the institution of this suit. Emeline Bush died in the
fall of 1917 and this suit was instituted soon thereafter.

Mrs. Phelps testified that she was married to J. M.
Phelps in her 17th year and never had any business to
transact for herself until after his death. She did not
know anything about land numbers and would not know
from reading numbers anything about how much land
was supposed to be conveyed nor where same was located.
She knew that her husband claimed that her father's
estate was indebted to him but knew nothing about the

settlement. She knew that her husband sold her interest in her father's estate to Lady but she did not sell any interest in her sister's land. She did not know she had any interest in it while her sister lived, never thought of it. The first intimation she had that her interest in her sister's lands was embraced in the deed to Lady was after her sister's death. She signed the bond for title and the deed. Her husband never told her that Lady had paid for the land. If the deed had been read over to her she would not have known about it because she did not know anything about land numbers.

Mrs. Jackson, the appellant, testified that she and her sister, Victoria Phelps, were the only heirs at law of Emeline Bush; that when Emeline Bush died that the two of them were left; that she and her sister Victoria were in possession of the lands in controversy.

The appellant contends that under the will of Henson Kenyon Emeline Owens at his death took the title in fee to the lands in controversy; that at the time of the deed of Victoria Phelps to the appellee Lady, Emeline Lady was still living and therefore Victoria Phelps had no title which she could convey; that the deed of Victoria Phelps to Lady "conveying whatever interest said Victoria Phelps may have" would not pass title which she acquired to the lands in controversy by inheritance from her sister Emeline Lady at her death; that the bond for title and all the transactions by which the lands in controversy were to be deeded to the appellee Lady merge in the deed, and therefore could not avail the appellee. Therefore, appellant was not estopped by the deed and prior transactions from asserting title.

It is immaterial whether Victoria Phelps acquired the lands in controversy through the will of her father or by inheritance from her sister Emeline, for a majority of us are convinced that the deed which she and her husband executed to the appellee, under the facts of this record concerning that transaction, should be construed as a warranty deed to these lands which under our statute and decisions conveyed all the title which Mrs. Phelps

had or which she afterwards acquired. Section 734, Kirby's Digest; *Cocke* v. *Brogan and Thorn,* 5 Ark. 693; *Watkins & Trapnall* v. *Wassell,* 15 Ark. 73; *Holland* v. *Rogers,* 33 Ark. 251-55; *Bradway* v. *Sidway,* 84 Ark. 527; *Colonial and U. S. Mort. Co., Ltd.* v. *Lee,* 95 Ark. 253.

(1-4) In the construction of a deed like any other contract it is the duty of the court to ascertain, if possible, the intention of the parties, especially that of the grantor. The whole deed is to be looked to and every sentence and word of it made to take effect if possible. Deeds are construed most strongly against the grantor or most favorably for the grantee. A deed must be so construed that all of its parts may be harmonized and stand together, if the same can be done, and carry out the manifest intention of the parties. Endeavoring to ascertain the intention of the parties the court will look not only to the contents of the deed, but will consider the relations of the grantor to the property conveyed. The intention is to be gathered from a consideration of the whole instrument rather than from particular clauses, but if there is a repugnancy between the granting clause and the habendum, the former will control the latter so as not to defeat the grant.

The above are but hornbook rules of construction which have been announced and uniformly adhered to by our court from almost its very beginning to the present time. See *Doe* v. *Porter,* 3 Ark. 18; *Gullet* v. *Lamberton,* 6 Ark. 109; *Malin* v. *Rolfe,* 53 Ark. 107; *Jenkins* v. *Ellis,* 111 Ark. 220; *Mt. Olive Stave Co.* v. *Handford,* 112 Ark. 527, and other cases to like effect cited in 2nd Crawford's Digest, Deeds, 3 Construction and Operation 1639.

(5-6) Of course it is also one of the cardinal rules of construction that if the language of the granting clause is so plain that it can not be misunderstood then there is no room for construction and other clauses must harmonize with this or yield to it. See *Swain* v. *Vance,* 28 Ark. 285. But this rule never applies where reconcilement between the clauses is possible upon consideration of the whole instrument so as to carry out the intention of the grantor

in making the deed.   See *Swain* v. *Vance, supra,* and other cases cited *supra;* 13 Cyc. 618 and 19, Deed.

(7-9)   Another well settled rule of construction is that if there is any ambiguity or uncertainty as to the intention of the parties when the instrument is considered as a whole then the court may consider in connection with the deed a bond for title, where the deed itself, or the extraneous facts, show that the deed was executed in compliance with the bond.   Undoubtedly as a general rule a deed made in execution of a contract for the sale of land, merges the provisions of the contract therein and all prior negotiations leading up to the execution of the deed.   Second Devlin on Real Estate, p. 1570, section 850, Deed.   But if there is such uncertainty and ambiguity in the language of the instrument as to require construction in order to ascertain the meaning of the parties thereto, then a bond for title, previously executed by the parties to the deed, may be considered in determining the question of intention and to explain any uncertainty or ambiguity in the deed.

"The question of merger has also been declared to be one of construction to be gathered from a consideration of the entire contents of the instrument, and the agreement upon which the deed is founded may be admissible or referred to, to explain any uncertainty or ambiguity in the latter."   13 Cyc. 616-17-18-19.

Now, applying the above rules to the deed under review, it will be readily seen that the deed is a warranty deed executed by J. M. Phelps and his wife Victoria Phelps conveying six different tracts of land to the appellee.   The language of the granting clause is, "We, James M. Phelps and Victoria Phelps, his wife, for and in consideration of $3,600 paid and to be paid to us by H. L. Lady do by these presents grant, bargain, and convey unto the said H. L. Lady the following land."   Then follows a description of the tracts.   The fifth tract is the land in controversy and at the end of the deed is, "And whatever interest the said Victoria Phelps may have in the S. E. of the N. W. (9.23 A.) and the S. ½ of the N. E. ¼, section 21, township 16 north, range 1 west."

Following the description of lands is this recital, "The last five tracts being the sole property of the said Victoria Phelps and which she conveys as *feme sole.*"

The habendum is "to have and to hold the same to the said H. L. Lady and to his heirs and assigns forever." The warranty is, "to warrant and defend the title to said land to him against the lawful claims of all persons whomsover."

The granting clause, it will be observed, conveys the lands and the covenant of warranty is to defend the title to said lands and furthermore the statement is made concerning the last five tracts that same are the sole property of Victoria Phelps and she so conveys them. If the clause, "And whatever interest the said Victoria Phelps may have," etc., stood alone, there would be some plausible ground for upholding the contention of the appellant that Victoria Phelps only intended to execute a quitclaim deed because she was in doubt as to whether she had any interest at all in the lands, or if any interest, what such interest was. But, as we have seen, the granting clause conveys the land and the clause following the description is an unequivocal declaration that the five tracts including the lands in controversy are her "sole property."

In the acknowledgment she again declares that the land which she conveys, as a *feme sole,* "relates to the land belonging to her."

There is certainly sufficient ambiguity in the various clauses of the deed to justify a resort to the bond for title and the facts connected with the transaction, as the source from which this deed sprung, to determine what was the intention of the parties in its execution.

It is the duty of the court to place itself as nearly as possible in the position of the parties when the instrument was executed, to construe its origin and source and all the attendant circumstances. *Wood* v. *Kelsey,* 90 Ark. 272-77.

Appellant relies upon the case of *Reynolds* v. *Shaver,* 59 Ark. 300, to sustain his contention that the words

"whatever interest the said Victoria Phelps may have" constituted the deed in suit a quitclaim only. But the language of the granting clause in that case was "do grant, bargain and sell unto Dennis Reynolds all our right, title, claim and interest in and to the following described land," etc., and the covenant of warranty was "warrant and defend the same unto the said Dennis Reynolds." The deed in that case purported to convey only the "right, title, claim, and interest in and to the land," and "to warrant and defend same," etc.

The court in the above case was called on to construe only the meaning of the words, "all our right, title, claim, and interest in and to the following described land." These words stood out alone with no other apparent conflicting or qualifying clauses or words that would render their meaning uncertain or ambiguous. The facts of that case thus clearly distinguish it from the case under consideration.

While Mrs. Phelps testified that she did not sell any interest in her sister's land and did not know that she had any interest while her sister lived, yet the bond for title which she and her husband executed to Lady flatly contradicts her. Furthermore, the testimony of the appellee, Lady, and the conduct of the parties at the time the settlement was made, which was in the nature of a family settlement, show clearly that she did at that time believe that she had title in remainder of the lands devised to her sister, which title she afterwards intended to convey with full covenants of general warranty to the appellee. See *Cox* v. *Simmons*, 55 Ark. 104.

The finding of the court, therefore, that Victoria Phelps had deeded the land in controversy to the appellee, that appellee was the owner of the land, and that his title thereto should be quieted, is correct.

While Victoria Phelps and the appellant in their complaint set up title by adverse possession in their sister Emeline, yet this was denied in the answer, and appellant introduced no proof to sustain the allegation. True, the appellee testified that he took possession of it

by reason of his marriage with Emeline Owens and about a year thereafter purchased the lands and kept possession as long as he lived with her and when they separated he surrendered possession of that particular part of the land and had never had possession of the same since. But there is no affirmative evidence that, after the appellee surrendered possession of the land to Emeline, she had the open, continuous, and adverse possession thereof for a period of seven years prior to her death. Indeed, the appellant makes no claim here to title by adverse possession.

The plaintiffs below, Victoria Phelps and Mary Jackson, were asking affirmative relief to have their title quieted and to have an injunction against the appellee, restraining him from taking possession of the lands in controversy and interfering with their title.

The burden was upon the plaintiffs to show that they were entitled to such relief. We are convinced that a decided preponderance of the evidence shows that Victoria Phelps had no title to the lands in controversy, and that the trial court ruled correctly in dissmissing their complaint for want of equity, and in entering a decree in favor of the appellee, describing the lands as they are described therein, and quieting his title thereto.

The decree is therefore affirmed.

WOOD, J., (on rehearing). (10) In the original opinion we affirmed the decree of the chancery court in which the lands were described as that part of the southeast quarter of the northwest quarter of section 21, township 16 north, range 1 west, lying south and east of private survey No. 36, containing 9.26 acres, more or less, and the south half of the northeast quarter, section 21, township 16 north, range 1 west. This is the same description as that contained in the complaint.

The appellant contends on rehearing that the deed under which the appellee claims described certain of the land as "part of the southeast northwest, 9.23 acres, section 21, township 16 north, range 1 west. That this de-

scription is void for uncertainty, citing *Graysonia-Nashville Lumber Co.* v. *Wright,* 117 Ark. 151.

While the description of this tract as contained in the deed is void for uncertainty, the testimony of Lady detailing the circumstances of the settlement and other testimony in the case showed unequivocallly that it was the intention of J. M. Phelps and Victoria Phelps by their deed to include in the deed the above tract of land.

The testimony fully warranted the court in so finding and in correctly describing the land in the decree. The testimony would have been sufficient to have justified the court in reforming the deed so as to have embraced this tract.

The decree of the court was tantamount to granting such relief to the appellee and it was upon that theory that we said in the opinion, "The finding of the court, therefore, that Victoria Phelps had deeded the land in controversy to the appellee, that appellee was the owner of the land, and that his title thereto should be quieted is correct."

McCULLOCH, C. J., (dissenting). I am wholly unable to find any distinguishing features between this case and the case of *Reynolds* v. *Shaver,* 59 Ark. 300, with respect to the interpretation of deeds of conveyances involved. In the former case the deed purported to convey the "right, title, claim and interest in and to the land" described, and concluded with a clause whereby the grantors undertook to "warrant and defend the same." This court decided that the deed was only a quitclaim and that the warranty applied only to whatever interest the grantee had at that time. In the present case that the deed, so far as concerns the land in controversy, only purported to convey "whatever interest the said Victoria Phelps may have in part of the southeast of the northwest (9.23 acres), and the south half of the northeast quarter of section 21, township 16 north, range 1 west;" and according to the doctrine of *Reynolds* v. *Shaver, supra,* it ought to be decided that the warranty

applied only to whatever interest Victoria Phelps had at that time. In fact the present case is the stronger one of the two with respect to applying the warranty to the interest conveyed, for there were four other tracts described in the deed and they are conveyed absolutely, and the warranty clause can appropriately be applied to them so as to give full effect to it.

The deed in question was only a quitclaim and did not, under Kirby's Digest, section 734, carry an after-acquired title. *Blanks v. Craig,* 72 Ark. 80; *Wells v. Chase,* 76 Ark. 417; *King v. Booth,* 94 Ark. 306.

Under any interpretation of Henson Kenyon's last will, Mrs. Phelps acquired no vested interest in the land prior to the death of Emeline Owen and her deed to appellee conveyed no title to the land in controversy.