DICKENS *v.* TISDALE.

4-6838                                    164 S. W. 2d 990

Opinion delivered October 19, 1942.

*Jack Machen,* for appellant.

*Stevens & Cheatham,* for appellee.

*Melvin T. Chambers, amicus curiae.*

HOLT, J. Emma Dickens Tisdale died testate in Columbia county, Arkansas, August 31, 1940. Appellants are the only heirs of J. L. and Amanda Dickens, deceased. Appellant, W. C. Dickens, is the brother of the testatrix, Emma Dickens Tisdale, and appellants, J. W. and J. H. Dickens, are her nephews. Appellee, W. O. Tisdale, is her surviving husband. Under the terms of her will she disposed of all of her property. Following the preamble, the will contains eight numbered paragraphs.

This litigation involves the construction of that part of paragraph four which is as follows: "Four: Of the remaining royalty acres of which I may die seized and possessed, I give unto the heirs of J. L. and Amanda Dickens, deceased, thirty-five royalty acres to be vested in said heirs of J. L. and Amanda Dickens forever; it being understood the rents, royalties and all other proceeds of this thirty-five acres are to be my husband's until his death."

In the trial below and here on appeal (quoting from appellants' brief) appellants' contention was, and is, "that under this paragraph of said will, and upon the death of the testatrix, they became vested with the fee simple title to an undivided 1/32nd part of all the oil, gas and other minerals underlying the lands left by the said Emma Dickens Tisdale, deceased, with the right to use and enjoy the same when produced, if ever; and, that the limiting clause, 'it being understood the rents, royalties and all other proceeds of this thirty-five acres are to be my husband's until his death,' is void as being an attempt on the part of the testatrix to deprive the estate, first given, of all of its essential legal properties and as being inconsistent with and repugnant to the preceding grant to them in fee."

It was the contention of appellee, W. O. Tisdale, husband of the testatrix, that under the provisions of paragraph four, *supra,* he acquired a life estate in the thirty-five royalty acres mentioned therein, and that appellants only acquired a remainder over after the termination of his life estate. This contention of appellee, Tisdale, was upheld by the trial court, and we think correctly so.

The general rule in the construction of a will, running through a long line of our cases, is clearly stated in the very recent case of *Rufty* v. *Brantly, ante,* p. 32, 161 S. W. 2d 11, wherein we said: "All the cases are to the effect that the primary purpose of construing a will is to arrive at the testatrix's intention in making it, and the rule of construction applicable in all cases is that the will should be read in its entirety, from its four corners, as many cases express the thought"; and also in *Bowen* v. *Frank,* 179 Ark. 1004, 18 S. W. 2d 1037, where it is said: "The purpose of construction of a will is to ascertain the intention of the testator from the language used, as it appears from consideration of the entire instrument, and, when such intention is ascertained, it must prevail, if not contrary to some rule of law, the court placing itself as near as may be in the position of the testator when making the will. *Fitzhugh* v. *Hubbard,* 41 Ark. 64; *Gregory* v. *Welch,* 90 Ark. 152, 118 S. W. 404; *Cockrill* v. *Armstrong,* 31 Ark. 580; *Smith* v. *Bell,* 6 Pet. (U. S.) 68, 8 L. Ed. 322. See, also, *Norris* v. *Johnson,* 151 Ark. 189, 235 S. W. 804; *Lockhard* v. *Lyons,* 174 Ark. 703, 297 S. W. 1018." See, also, the case of *Sheltering Arms Hospital, et al.,* v. *Shineberger,* 201 Ark. 780, 146 S. W. 2d 921.

We think it clear that the testatrix intended by the words "it being understood the rents, royalties and other proceeds of this thirty-five acres are to be my husband's until his death" to so limit the estate conveyed to appellants in the preceding clause that it would not take effect until her husband's death. In other words, the estate which she did convey to appellants was the remainder over in the thirty-five royalty acres in question upon the termination of the life estate of her husband, W. O. Tisdale. It will be observed that this clause is only separated from the preceding clause by a semicolon and is a part of the same paragraph—and being the last clause, it will control the intention of the testatrix. If further evidence be needed that such was her intention, we find in paragraph three of the will that Mrs. Tisdale, the testatrix, devised to each of the three appellants and other kinsmen, two royalty acres in other land which

was to take effect immediately upon her death, and not at the death of her husband, and in a separate paragraph —paragraph four in question here—she gave thirty-five other royalty acres, which she owned at her death, to the appellants here in addition to the royalty acres given them under paragraph three, effective, however, at her husband's death and not at her own death, as provided in paragraph three. The language used in both paragraphs is clear and unambiguous.

Appellant argues, however, that while such might have been her intention, she did not do so for the reason that the last clause in paragraph four, *supra*, is void and appellants acquired under the language remaining in said paragraph a fee simple title to the thirty-five acres which became effective at the testatrix's death. We think, however, that this court in *Bowen* v. *Frank*, 179 Ark. 1004, 18 S. W. 2d 1037, has ruled to the contrary. In that case this court had before it for consideration the following provision contained in the will: ''I hereby give, devise and bequeath to my seven children and legal heirs, to-wit: Charles F., Robert B., John L., Walter A., Clara M., Elizabeth G., and Lenora E. Frank, now Mrs. S. A. Bowen, all of my property, real, personal and mixed, wheresoever situated, not already disposed of, which I now own or may hereafter acquire, and of which I may die seized and possessed, absolutely and in fee simple, and in equal shares. The division shall be made by three commissioners to be appointed by my said children, and the lots and parcels of land so divided shall be drawn for by them, and any difference in the valuation be settled among themselves. The property of my daughters, however, shall be held and owned by them for their sole and separate use and enjoyment, free from the debts and contracts of any husbands, for and during their natural lives, with remainder in fee to their children, and in default of children surviving either of them, then to my children who shall then be living, their heirs and assigns forever, and should any of my sons die without issue, his or their share shall also revert to my children then living, their heirs and assigns forever.''

\* \* \*

"The first clause of the fourth item provides equally for each of the seven children of the testator, and devises an estate in fee simple to each of them, sons and daughters alike. The last clause of this item, however, announces an unmistakable intention to limit the interest of his daughters to a life estate in their respective shares, as clearly as his intention in the opening clause had by its terms created an ownership in fee. There is no ambiguity or obscurity in either of. these clauses, and no room for the operation of the rule that a clear grant of the fee by an earlier provision of the will will not be modified or qualified by a later obscure and ambiguous provision, as said by the Tennessee court. Since the last clause in a will governs in its construction in determining the intention of the testator, we are constrainted to agree to the holding of the Tennessee court, that it was the intention of the testator to devise to his said three daughters a life estate only, with a remainder in fee to their children, and if no children, then to the children of the testator then living, their heirs and assigns (*Gist* v. *Pettus,* 115 Ark. 400, 171 S. W. 480; *Little* v. *McGuire,* 113 Ark. 497, 168 S. W. 1084; *Jackson* v. *Lady,* 140 Ark. 512, 216 S. W. 505), the devise in the first clause of the item being restricted accordingly." See *Fleming* v. *Blount,* 202 Ark. 507, 151 S. W. 2d 88.

Appellants frankly make this statement in their brief: "It would be foolish for appellants to insist that under paragraph four of the will there was not manifest an intention on the part of the testatrix that the appellee should receive a benefit from the thirty-five royalty acres devised to the appellants." If the testatrix intended that appellee have the benefits from these thirty-five royalty acres, we think it clear that appellee, under the terms of paragraph four, not only acquired the benefits to be obtained from the thirty-five royalty acres in question, but that he acquired a life estate therein with remainder over to appellants at his death. We think, too, that the meaning of the term "royalty acres" as used in the instrument before us is the commonly accepted meaning, and

that is—that part of the oil that goes to the landowner, whether it be in place or after production.

Finding no error, the decree is affirmed.