DESHA v. ERWIN.

Opinion delivered April 13, 1925.

1. NAVIGABLE WATERS—EFFECT OF ACCRETION.—A riparian owner of land bounded by a navigable stream, the banks of which are changed by gradual and imperceptible process of accretion or erosion, continues to hold to the stream as his boundary.

2. NAVIGABLE WATERS—AVULSION.—Where a navigable stream suddenly and perceptibly abandons its old channel, the boundary line of a riparian owner is not changed, but remains at the former line.

3. DEEDS—DESCRIPTION WITH REFERENCE TO PUBLIC SURVEYS.—Deeds conveying land by sections and quarter sections are to be construed with reference to the public surveys.

4. DEEDS—CONSTRUCTION.—In the construction of deeds, the common law rule is that effect will be given to the intention of the parties as drawn from the language of the deed, if consistent with the rules of law.

5. DEEDS—GENERAL AND PARTICULAR DESCRIPTION.—A general description of the land intended to be conveyed, *held* not inconsistent with a particular description given where it appears that the general description was inserted to aid in the location of the land conveyed by the particular description.

Appeal from Independence Circuit Court; *Dene H. Coleman*, Judge; reversed.

STATEMENT OF FACTS.

Ben Desha instituted this action in the circuit court against Ida L. Erwin and R. L. Flinn to recover a tract of land in Independence County, Arkansas, of which he claims to be the owner.

The suit was defended on the ground that the land in question was an accretion to land owned by the defendants, and on the further ground that the plaintiff had no title to said land.

The record shows that originally two islands were formed south of the main channel of White River, and south and southwest of the town of Batesville, in Independence County, Arkansas. Both of these islands were formed by the waters of White River, and were separated from each other by a slough which ran into White River. One of these islands was known as

Little Island and the other as Big Island. Big Island was south of the city of Batesville and east and southeast of Little Island. In 1868 or 1869 the main channel of White River changed and cut through the center of Little Island and the northern part of Big Island. The land in controversy comprised 23.68 acres in the southeast fractional quarter of section 17 and four acres in lot 3 in section 20, and immediately south of the tract first described. Both of these tracts are in township 13 north, range 6 west, and in the northern part of Big Island as it was before the change in the main channel of White River in 1868 and 1869, as above described.

Ben Desha acquired title to the land in Big Island immediately south of the main channel of White River as it now runs, and also claims to have acquired title to the land in controversy, which is north of the river, by the same deed.

It is the claim of the defendants that the land in controversy was formed as an accretion to their land after the change of the channel in White River in 1868 or 1869. They also claim that the plaintiff acquired no title to the land in controversy, and therefore cannot maintain this action.

The evidence on this branch of the case will be set out and discussed under an appropriate heading in the opinion.

The circuit court directed a verdict in favor of the defendants, and from the judgment rendered the plaintiff has duly prosecuted an appeal to this court.

*McCaleb & McCaleb* and *Cole Poindexter,* for appellant.

*Samuel M. Casey* and *Ernest Neill,* for appellees.

Hart, J., (after stating the facts). It is sought to uphold the judgment on the ground that the land in controversy formed as an accretion to the land belonging to the defendants and their grantors, and that the plaintiff, having no title to it, should not be allowed to maintain this action.

On the part of the plaintiff, it is contended that the land was originally a part of Big Island, and was cut off from the other land on Big Island by a sudden change in the main channel of White River in 1868 or 1869. White River is a navigable stream, and it is the established rule that a riparian owner of land bounded by a stream, the banks of which are changed by the gradual and imperceptible process of accretion or erosion, continues to hold to the stream as his boundary; if his land is increased, he is not accountable for the gain, and, if it is diminished, he has no recourse for the loss. But, where a stream suddenly and perceptibly abandons its old channel, the title is not affected, and the boundary remains at the former line. *Philadelphia Co.* v. *Stimson,* 223 U. S. 605, and cases cited; *Wallace* v. *Driver,* 61 Ark. 429; and *Yutterman* v. *Grier,* 112 Ark. 366.

The undisputed evidence shows that the northern part of both Little Island and Big Island was south of the main channel of White River. It also shows that a sudden and unexpected overflow of White River caused its main channel to cut through the central part of Little Island and also the northwestern part of Big Island. Since that time the main channel of White River has flowed through this cutoff. The witnesses are not certain whether the change occurred in 1868 or 1869, but they are certain that the change was sudden, and resulted from an unprecedented overflow of White River. They say that a part of the northwest part of Big Island was left north of the river when the sudden change in its channel occurred, and that the land in question is either that part of Big Island which was left after the sudden change in the channel of White River, or that it is this land together with the accretion formed on its southern boundary. The northern part of this land comprises 23.68 acres, and is situated in the southeast fractional quarter of section 17, and immediately south and contiguous to this is the four-acre tract, which is situated south of the first-mentioned tract and immediately north of White River, in section 20.

As we have already seen, when the change in the stream is sudden and at once a new channel is formed, the title to the land remains the same. This sudden and rapid change of channel is termed in law an avulsion. Accretion, no matter to which side it adds ground, leaves the boundary still the center of the main channel. On the other hand, an avulsion has no effect on the boundary, but leaves it in the center of the old channel. If we are correct in saying that the undisputed evidence shows that the land in question was formed by avulsion, the title to it remains the same as if no avulsion had occurred.

The circuit court seems to have had this view of the land and the law, but directed a verdict for the defendants on the theory that the land in controversy was not embraced within the description of the land in the deed under which the plaintiff claims title. In other words, in his opinion the whole case turned upon the construction of the deed from Theodore Maxfield and Sallie A. Maxfield to Ben Desha, executed on the 13th day of January, 1903. That part of the description in the deed just referred to which is material to this case is as follows:

"The southeast fractional quarter section seventeen (17) (in island) containing 42.72 acres, more or less; lot three (3) of the northeast quarter of section twenty (20), in island, containing 31.49 acres, more or less." * * * "All of said lands being in township thirteen (13) north, range six (6) west, it being the intention of the grantors herein to convey all of the lands on what is known as the Big Island devised to the said Sallie A. Maxfield by her father, John F. Allen, by last will and testament."

The will of John F. Allen was signed by him on the 23rd day of December, 1898. The will recites that the testator wills and bequeaths to Sarah, wife of Theodore Maxfield, the following described lands, to-wit:

"Also to Sarah, S. E. fraction of section 17, 13, 6; lots 3 and 4 of N. E. section 20, 13, 6, and the west part of N. W. fraction 21, 13, 6, on Big Island, Ind. Co."

Other land is given to Sarah A. Maxfield, a daughter of the testator, by the will, the description of which is omitted because it has no bearing on this suit.

The record also shows that John F. Allen acquired title by deed from Edwin T. Burr on the 23rd day of September, 1860, to the following land:

"The northwest fra'l quarter of section twenty, in township thirteen north, of range six west, containing one hundred and one 36/100 acres, more or less; and the southeast fr'l. part of the southeast fractional quarter of fractional section seventeen, of township thirteen north, of range six west, all on the Big Island, in White River, west of Batesville; and also the lots No. one, two and ten and eleven, of block No. four of the town of Batesville."

Thus it will be seen that John F. Allen had title to all the land comprising Big Island at the time of the sudden and visible change in the channel of White River in 1868 or 1869. The will of John F. Allen was not executed until after the avulsion in 1868 or 1869. Allen gave to his daughter, Sarah A. or Sallie A. Maxfield, the southeast fractional part of 17 and lots 3 and 4 of the northeast section of 20 on Big Island, in Independence County. This description embraced the land in controversy. Now in the deed from Sarah A. Maxfield and Theodore Maxfield, her husband, to Ben Desha the description is as follows: Southeast fractional quarter of section 17 (in island), and lot 3 of the northeast quarter of section 20 in island.

The land in controversy is included in this description, and, when land is described in this manner, by sections and quarter sections, we understand the language is to be construed with reference to the public surveys of the United States. As a general thing, lands in this State are described in deeds according to the subdivisions of the government surveys. The general rule is that the parties intend that these surveys shall be resorted to for the purpose of determining the location and quantity of the lands conveyed. It is also true that

the descriptions according to the government surveys are to ascertain the boundaries, and are the usual means resorted to to find the location and quantity of the land conveyed.

The circuit court proceeded upon the theory that the description was changed by the concluding part of the granting clause of the deed as follows:

"It being the intention of the grantors herein to convey all of the lands- on what is known as the Big Island devised to the said Sallie A. Maxfield by her father, John F. Allen, by last will and testament."

We cannot agree with the circuit court in this conclusion. It is well settled in this State that the intention of a written instrument, gathered from all that is within its four corners, ordinarily controls, and, in the construction of deeds, the common-law rule is that effect will be given to the intention of the parties as drawn from the language of the deed, if consistent with the rules of law. *Doe* v. *Porter*, 3 Ark 18; *Beardsley* v. *Nashville*, 64 Ark. 240; *Abbott* v. *Parker*, 103 Ark. 425; and *Cummins Bros.* v. *Subiaco Coal Co.*, 150 Ark. 187.

Tested by this rule, we do not think the two descriptions of the land conveyed are inconsistent with each other, and we are of the opinion that the general description quoted above in the granting clause of the deed was intended as an aid in locating the land, and did not intend to restrict the quantity of land conveyed to a lesser quantity than that contained in the particular description according to the subdivisions of the government survey. The description according to the government survey could alone be resorted to to determine the quantity and location of the land. The general description was not intended to restrict the quantity of land conveyed, but was rather explanatory of the situation of the land and of the parties in relation to it and to each other. The description according to the subdivisions of the government survey showed the precise location and bounds of the land, and reflects the real intention of the parties.

There is nothing in the language of the deed whatever which would carry with it the idea that the general description was inserted for the purpose of curtailing and controlling the particular and definite description of the land.

Therefore we are of the opinion that the court erred in directing a verdict for the defendants.

The views we have expressed call for a reversal of the judgment, and the cause will be remanded for a new trial.