BEASLEY *v.* SHINN.

4-6045 144 S. W. 2d 710

Opinion delivered October 14, 1940.

*Wade H. Kitchens, Jr.,* and *Melvin T. Chambers,* for appellants.

*Ezra Garner,* for appellees.

GRIFFIN SMITH, C. J. August 26, 1927, C. C. Fincher and Estella Fincher, husband and wife, executed a warranty deed conveying to Dr. J. Beasley 105 acres of

land. In the granting clause is a recital that the conveyance is subject to a contract of "sale and rent" executed by C. C. Fincher to I. B. Shinn, dated January 1, 1926. There was an express covenant binding Beasley, his heirs and assigns, to "carry out the contract and to relieve the grantors of any liability thereunder."

The Shinn contract called for payment to Fincher of $4,000 in equal annual installments, beginning November 1, 1926. There was reservation to Fincher of one-half of the oil, gas, and other minerals.

November 5, 1927, Shinn paid the full obligation, whereupon Dr. Beasley and his wife delivered their deed. No mention of the mineral interest reserved by Fincher in his contract with Shinn was contained in the granting clause of Beasley's deed to Shinn, but in the *habendum* this language appears: "Reserving one-half of all oil, gas and minerals in and under said land."

October 13, 1928, Shinn and his wife conveyed 40 acres to Mrs. Leona Pearce Runnels. In the deed the description immediately follows the granting clause. Next in sequence is the following: "It is expressly agreed and understood by the parties that one-half of the mineral rights in and under said land has been retained by a former grantor". This declaration is followed by the *habendum*.

January 22, 1930, Mrs. Runnels conveyed five acres of her forty to Mrs. Willie Bugg and Mrs. Lorena Greer.[1] June 17, 1934, Mrs. Greer conveyed her interest to Mrs. Bugg.

Dr. Beasley died. Suit was brought by his widow and heirs to reform the deed of November 5, 1927. The allegation was that through mutual mistake reservation of minerals was expressed in the *habendum* rather than in the granting clause.

The chancellor decreed reformation as to the Shinns, but held that as to Mrs. Runnels and Mrs. Bugg the reservation was not binding. All parties adversely affected have appealed.

---

[1] Mrs. Bugg is Mrs. Runnels' mother and Mrs. Greer is a sister. Consideration in the deeds is $1, and love and affection.

It is contended by the Shinns that their written contract with Fincher forfeited and that it was superseded by an oral agreement without reservation as to minerals; that the Fincher-Beasley transaction was a mortgage, and by reason of the oral agreement the written reservation is non-effective. Other defenses need not be stated.

Fincher testified that the property he sold Shinn was formerly owned by F. M. Graves. Dr. Beasley's son, Herschell, tried to buy the land, but failed. Shortly after witness acquired title Herschell Beasley came to him and contended he had bought the place, and insisted upon a deed to it.[2] After witness had contracted with Shinn, Herschell Beasley said that his father had some idle money he desired to invest. Inquiry was made in respect of the Shinn notes. Fincher said he would not sell them; that although Shinn had forfeited his contract, he had worked hard, had a large family, and "I am going to go ahead and let him pay for the place". At that time Herschell did not mention buying the land, but explained that he wanted to make a loan for his father, adding: "I will go ahead and let Mr. Shinn pay for the place as you have agreed". Fincher then testified: "As far as the mineral rights are concerned, I had one-half of them, but they were not mentioned between Herschell and me . . . . I told him 'all right', and we made out the papers and he paid me off. That fall Mr. Shinn came to me very much excited. He told me that Herschell had ordered him to turn over the rent; that he was about to be dispossessed". Fincher arranged to pay off the Shinn notes, instructing that the deed executed by Dr. Beasley be in favor of Shinn. Shinn later paid him in full.

In November, 1934, Shinn executed a mortgage to a Mrs. Heath in which it was recited: "It is expressly agreed and understood by the parties hereto that one-half of the mineral rights in and under said land has been retained by a former grantor".

[2] Herschell Beasley's assertion that his father bought the property is based upon negotiations Herschell conducted for Dr. Beasley with Graves and delivery of check. Beasley filed suit, but dismissed it.

Herschell Beasley testified that in 1925 he tried to buy the land from Graves, who lived in Denison, Texas. Witness went to Denison and, as he thought, closed a deal. Payment was evidenced by check for $3,000. Graves explained that because of infirmities his wife was unable to go before a notary public at that time, but said that her signature and acknowledgment would be procured in a day or two, and promised to send the deed. Shortly thereafter the check and deed were mailed to witness with a letter from Graves, who stated that his wife had declined to join in the transaction. A few weeks later witness was informed by an abstracter that the property had been sold to Fincher.

When the deed from Beasley to Shinn was delivered, Fincher surrendered to Beasley a copy of the Fincher-Shinn contract, including Shinn's notes, "and made the contract a part of the deed".

According to Herschell's testimony, when Shinn paid the contractual obligation the scrivener who was preparing the deed from Beasley to Shinn took the description from the contract. Herschell insisted that if Shinn would produce the original deed it would show that the description was pasted to it, "and it will exactly fit what has been cut out [of the contract"].

The deed was prepared at the Peoples Bank by H. A. Fincher, cashier—brother of C. C. Fincher. Dr. Beasley was a director of the bank. Acknowledgment was before H. A. Fincher, who was a notary public.

In *Mason* v. *Jackson*, 194 Ark. 236, 106 S. W. 2d 610, 111 A. L. R. 1071, the rule contended for in the instant case was discussed. J. T. Mason and his wife had "granted, bargained, sold and conveyed unto W. D. Jackson and unto his heirs and assigns forever" forty acres of land, description of which immediately followed the granting clause just quoted. The *habendum* was: "To have and to hold the same unto the said W. D. Jackson and unto his heirs and assigns forever with all appurtenances thereunto belonging, except one-half interest in all oil, gas and mineral rights."

In the opinion it was said: "From earliest times the rule has obtained that where two clauses in a deed are totally repugnant to each other, the first will be received and the latter rejected . . . . Applying this rule to specific clauses, this court, in *Whetstone* v. *Hunt,* 78 Ark. 230, 93 S. W. 979, 8 Ann. Cas. 443, quoted with approval from Washburn on Real Property, as follows: 'If there is a clear repugnance between the nature of the estate granted and that limited in the *habendum,* the latter yields to the former' ".

A strong dissent to the rule upheld in the Mason-Jackson Case was expressed by two of the judges.

Our latest case dealing with this principle is *Luther* v. *Patman,* 200 Ark. 853, 141 S. W. 2d 42. Effect of the grant by Luther and his wife was to create what at common law would have been an estate tail, but which, under our statute, was a life estate in Mrs. Mitchell with the remainder in fee to her bodily heirs. *Horsley, et al.,* v. *Hilburn, et al.,* 44 Ark. 458. The *habendum* contained a condition subsequent in the form of a defeasance clause, expressed in this language: "To have and to hold the same unto the said I. N. Mitchell and unto her bodily heirs forever,[3] with all appurtenances thereunto belonging, conditioned that she shall retain the same during her natural life, and an offer on her part during her lifetime to sell the said lands shall forfeit this conveyance and the said lands shall thereupon revert to the estate of the grantor." *Luther* v. *Patman,* 200 Ark. 853, 141 S. W. 2d 42.

In the opinion it was said: "We have examined the deed and have concluded that there is no ambiguity therein, and that the purport and effect thereof was to vest in Mrs. I. N. Mitchell a life estate on condition that she should keep the property . . . The purport of the whole deed is to deal with the life estate and we find no intention in it whatever to the effect that the grantor was attempting to or did grant a fee simple title to his daughter . . . . The only addition in the *habendum* clause not contained in the granting clause

[3] "Bodily heirs" are also included in the granting clause.

was that in case [Mrs. Mitchell] should sell the property she would forfeit her estate to the grantor. With this one exception the two clauses are exactly alike''.

In *Moore* v. *Sharpe,* 91 Ark. 407, 121 S. W. 341, 23 L. R. A., N. S., 93, it was held (in respect of a condition subsequent not performed) that the grantor could effect a forfeiture by merely conveying to another after the condition had been broken, without the necessity of prior entry.

The granting clause of the deed in the Luther-Patman Case did not contain an express condition for forfeiture, although there was reference to an agreement by Mrs. Mitchell that she would keep the land during her lifetime. Only in the *habendum* was there a declaration that upon condition broken the property should revert to the estate of the grantor. In respect of the life estate held to have been created in Mrs. Mitchell, effect was given to the forfeiture set out in the *habendum*. Otherwise, the result could not have been reached. It is in conflict with *Mason* v. *Jackson, supra.*

The Luther-Patman opinion carries a lengthy quotation from American Jurisprudence, vol. 16, § 237, p. 570. It was there said that the judicial prescript requiring rejection of language in an *habendum* creating an estate repugnant to that in the granting clause is not a rule of property, but one of construction—a rule to be resorted to only when the court cannot determine which of the clauses was intended to be controlling.

Many courts, including our own, have followed technical construction, hoary with common law fiat, and where an estate was created in the granting clause of a deed they have held to be void any attempted reservation in the *habendum* when the effect of giving force to the *habendum* would in any manner impair the prior grant.

In the instant case we are dealing with a transaction wherein mineral interests severable from the fee were in controversy. The question is whether such mineral interests may be retained in a deed when the

reservation does not appear in the granting clause, but is clearly set out in the *habendum*. We confine our holding to that situation.

Summarizing transactions of the parties, we have the following: Fincher, in his rental-sale contract with Shinn, retained a half interest in the minerals. In the granting clause of Fincher's deed to Beasley the conveyance was made subject to the Fincher-Shinn contract. In Beasley's deed to Shinn (representing a transaction consummated at Fincher's direction) reservation of minerals appears in the *habendum*. In his deed to Mrs. Runnels in 1928 Shinn recognized the force of the reservation by Beasley. In his mortgage to Mrs. Heath in 1934 the interest was admitted by Shinn.

Purposes of the parties in all these transactions were expressed so clearly that no one could have been deceived or misled, and it is our view that these intentions are ineluctable and should be given effect. As to Mrs. Bugg, the matter in controversy appears in her chain of title.

To the extent that this opinion conflicts with *Mason* v. *Jackson, supra,* and other cases involving mineral reservations, they are overruled.

Reservations of mineral rights are so often attempted to be expressed in the *habendum* that it is not just to apply the technical rule of apparent limitation on the prior grant where mineral interests are excluded by subsequent language. Rather, consideration should be given the intentions of the parties as gathered from the entire document.

Under the view here expressed it is not necessary that the deeds be reformed. That part of the decree adjudging that the Shinns are not entitled to the relief prayed for is affirmed. The holding that Mrs. Runnels (and through her Mrs. Bugg) took title under conveyances subsequent to Beasley's deed to the Shinns is reversed. The cause is remanded with directions to enter a decree quieting title in the original plaintiffs below to the half interest in minerals pertaining to the entire tract of 105 acres.