JEFFERSON SQUARE *v.* HART SHOES.

5-3501                                   388 S. W. 2d 902

Opinion delivered March 8, 1965.

[As amended on Denial of Rehearing May 3, 1965.]

*Coleman, Gantt, Ramsay & Cox* and *William C. Bridgforth,* for appellant.

*Bridges, Young & Matthews,* for appellee.

PAUL WARD, Associate Justice. The essence of this litigation is the construction or interpretation of one paragraph in a lease agreement.

Jefferson Square, Inc. (appellant), an Arkansas Corporation, owns and operates a shopping center in Jefferson County within the city limits of Pine Bluff, known as Jefferson Square. Under date of July 11, 1960 appellant (as lessor) entered into a lease agreement with James V. Thomas (as lessee) under which the latter leased a designated store space in Jefferson Square for a period of fifteen years with option to renew for another five years. In this lease agreement lessee was bound to pay a minimum of $540 per month in advance. In addition lessee agreed to pay 5% of all gross sales in excess of $129,600 during each lease year. Lessee agreed to use the designated store space as a retail *Family Shoe Store,* selling ''all styles of shoes, rubber footwear, tennis shoes, hosiery, bags, findings, and all other kindred items usually sold by a family shoe store''.

The lease also provided lessee could assign its lease ''to a wholly owned subsidiary, or to a corporation formed, or to be formed. . . .'' On June 9, 1961 lessee assigned the above described lease agreement to ''Hart Shoes, Inc.'', the appellee herein.

On July 18, 1960 a lease *similar to the one above described* had been entered into by appellant (as lessor) and the ''Dan Cohen Company'' (as lessee). The latter company operated a ''family shoe store'' in the Jefferson Square shopping center until July, 1963 when it went into bankruptcy and it was allowed to cancel its lease. On August 1, 1963 appellant permitted ''Holiday, Inc.''

to assume the provisions of the Dan Cohen Company's lease.

Paragraph 26 of the lease agreement between appellant and appellee reads as follows:

"Lessor covenants that it will not lease to another family shoe store (with the exception of the Dan Cohen Company) in the shopping center as shown on Exhibit A. This instrument will not prevent the sale of shoes in a ladies' ready-to-wear, junior department store, major department store, variety store, Herbert Cox Corrective Shoes or women's specialty shoes in a higher price bracket than generally carried by International Shoe."

On November 29, 1963 appellee instituted suit against appellant, alleging (among other things) that appellant had violated the provisions of paragraph 26 of its lease agreement.

Under the view we take of this case (as hereafter expressed) we think it is important to understand the exact issue raised by appellee, and therefore we set out verbatim the pertinent parts of the complaint.

"Under Paragraph 26 of said Agreement of Lease the defendant covenanted that it would not lease to another family shoe store with the exception of the Dan Cohen Company in the Jefferson Square Shopping Center.

"The retail shoe business operated by the Dan Cohen Company specialized in lower priced merchandise which was not competitive with the retail selling business of the plaintiff. The provisions of said Paragraph 26 were a substantial part of the consideration contained in said lease on the part of lessor and induced this plaintiff to assume the obligations of Lessee by assignment.

"The Dan Cohen Shoe Company has now vacated the premises in Jefferson Square and over the objections and protests of plaintiff the defendant is renting said space to Holiday Shoes City, a family shoe store which competes directly with the retail shoe business maintained by the plaintiff."

The prayer was (a) that the defendant (appellant be restrained "from continuing to violate the provisions of said lease" and (b) that appellee be given damages "sustained up to date of the trial of this cause". In an amendment to the complaint appellee alleged it had been damaged in the amount of $3,587 "in loss of profits resulting from damage to its business operation caused by the defendant's violation of paragraph 26 of the lease between the parties."

The pertinent part of appellant's answer is:

"Further answering, this defendant states that in paragraph 26 of the agreement of lease mentioned in plaintiff's complaint wherein lessor covenanted that it would not lease to another family shoe store, with the exception of Dan Cohen Company, it referred to a class or type of shoe store; that the Dan Cohen Company was declared a bankrupt and Holiday, Inc., which operates the shoe store known as Holiday Shoe City, is a comparable operation to the Dan Cohen Company; and that the operation by Holiday Shoe City is not in violation of the plaintiff's lease."

The trial court entered a decree (a) restraining appellant "from continuing in effect the lease of space in the Jefferson Square Shopping Center to Holiday, Inc. . . ." and (b) denying appellee damages from violation of the lease by appellant. In a comprehensive and written opinion the trial court made this comment relative to part (a) of the decree: ". . . the main issue before the court is whether said paargraph 26 is ambiguous and if it is ambiguous, did the defendant's evidence establish that the lease had not, as a matter of law, been violated". Relative to part (b) of the decree, the trial court found the evidence was conflicting and did not show any loss of business suffered by appellee.

Appellant prosecutes this appeal relying on two points for a reversal, and appellee prosecutes a cross-appeal on the question of damages. Having concluded the case must be reversed on the point raised by appellant, it will not be necessary to discuss the other points.

Appellant's point is expressed in these words:

"Paragraph 26 of the lease between Jefferson Square, Inc. and James V. Thomas that was assigned to Hart Shoes, Inc. is ambiguous and parol testimony should have been allowed to clear up this ambiguity."

We point out that we do not entirely agree that the trial court erred in refusing to allow the introduction of certain pertinent testimony offered by appellant. In fact we have searched the briefs in vain to find where any objections were made by appellee to any testimony offered by appellant. After diligently searching the somewhat voluminous record we find where appellee did object to certain testimony by witness Farris on the ground of hearsay (R. 153) and also objected when the same witness attempted to state his "intentions". This testimony was clearly inadmissible and the trial court so ruled. While the records also show a few other objections, we find much other testimony in the record introduced by appellant which was not objected to and much testimony introduced by appellee. Under the view we take, it is immaterial that the trial court refused, over proper objections by appellee, to allow certain competent testimony to be introduced. This is true because the record contains other testimony introduced by both appellant and appellee which, we think, reveals the true meaning of paragraph 26. That meaning is, we think, that there were to be two, and only two *Family Shoe Stores* in the shopping center. We are inclined to think the language used in paragraph 26 is susceptible of no other reasonable interpretation—that is, that the words "Dan Cohen Company" referred to a "type" of shoe store and did not mean that no other company of the same "type" could ever sell shoes in the place set aside for Cohen. It admitted that the lease (to Thomas) gave Thomas the right to assign it, and that it was assigned to appellee; and, it is revealed by the record that the lease to Cohen could also be assigned. The result is that appellee is now in the position it would have been if Cohen had assigned its lease to Holiday, Inc. Any other interpretation of paragraph 26 would probably mean that the spot assigned to Cohen would have to re-

main vacant for the rest of the lease period—or about thirteen years. The record further shows that all the parties here involved (appellee, Cohen and Holiday) operated a Family Shoe Store. It is certainly reasonable to assume that all these parties and also appellant knew full well the character and meaning of a Family Shoe Store. That being true, it would appear presumptuous for this Court or a trial court to distinguish between them on conflicting and confusing testimony relative to bulk sales, net profits, and overlapping prices charged for different types of shoes.

The facts and circumstances mentioned above, together with many other similar facts and circumstances revealed in the record, too numerous to mention, make clear the meaning of paragraph 26. Under numerous decisions of this Court all the above matters can be considered in arriving at the meaning of this paragraph. See *Boyd* v. *Lloyd*, 86 Ark. 169, 110 S. W. 596; *Arkansas Amusement Corporation* v. *Kempner*, 182 Ark. 897, 33 S. W. 2d 42. In the *Kempner* case we said:

"It is the settled rule in this state that parol evidence of conversations and negotiations leading up to the execution of a contract, as well as the relation of the parties thereto and the attendant circumstances to explain and aid in the interpretation of uncertainties and ambiguities contained in writing may be admitted."

In reaching the result previously indicated we have not overlooked the rule well established by this Court (as in *Arkansas Power & Light Company* v. *Murry*, 231 Ark. 559, 331 S. W. 2d 98) that where there is any doubt or ambiguity about the meaning of a contract it will be resolved against the party who prepared it—and it is conceded that appellant prepared the lease contract here under consideration. However, the rule just mentioned is not to be applied until and unless a "doubt" exists after the court has given consideration to the parol evidence referred to in the *Kempner* case, *supra*. After considering the language in paragraph 26 together with the facts and circumstances revealed by the record, we take the position that no reasonable doubt exists.

In accordance with what has heretofore been said, we conclude that the decree must be reversed and the cause of action dismissed. It is so ordered.

Reversed.

HARRIS, C.J., not participating.

McFADDIN, J., dissents.