## Billy Dean STARKS *v.* NORTH LITTLE ROCK POLICEMEN'S PENSION and RELIEF FUND

73-298                                510 S.W. 2d 305

Opinion delivered May 6, 1974
[Rehearing denied June 10, 1974.]

*Carpenter, Finch & Dishongh*, for appellant.

*Wright, Lindsey & Jennings*, for appellee.

CONLEY BYRD, Justice. Appellee, North Little Rock, Arkansas Policemen's Pension and Relief Fund, brought an action against appellant Billy Dean Starks alleging:

> "Billy Dean Starks had numerous dealings with Plaintiff from July of 1971 through October of 1972. Billy Dean Starks, as a bond broker, bought and sold securities for Plaintiff. Billy Dean Starks defrauded Plaintiff of a sum of not less than Six Hundred and Thirty Thousand Dollars ($630,000.00). During the period in which Billy Dean Starks committed the acts of fraud he was acting in a fiduciary capacity."

The prayer of appellee's complaint, so far as applicable to appellant, was as follows:

> "Wherefore, Plaintiff prays that it have a judgment against Billy Dean Starks for an amount not less than Six Hundred and Thirty Thousand Dollars ($630,000.00); . . ."

Thereafter, the trial court found the appellant in default and ordered "that a default judgment in favor of plaintiff be entered against him after a hearing to determine damages." At the hearing to determine damages appellant was present through his counsel. Upon the proof there presented, the trial court entered judgment for $934,915.61. For reversal appellant contends that the trial court erred in rendering judgment for a sum in excess of the $630,000.00 set forth in the declaration and prayer.

Appellee acknowledges our prior cases, *Hudspeth* v. *Gray*, 5 Ark. 157 (1843), *Pleasants* v. *State Bank*, 8 Ark. 456 (1848), and *Arkansas Power & Light Co.* v. *Murry*, 231 Ark. 559, 331 S.W. 2d 98 (1960), which limit the amount of damages to the amount laid in the declaration, but contends that the result of those cases has been altered by the enactment of Act 205 of 1971 which provides:

> "SECTION 1. Subsection Fourth of Section 109 of the Civil Code, the same being Arkansas Statutes (1947) Section 27-1113 (Fourth), is hereby amended to read as follows:
>
> 'Fourth. A demand for the relief to which the plaintiff considers himself entitled. In complaints for unliquidated damage, a prayer containing no specified amount in money, shall limit recovery to an amount less than required for Federal Court jurisdiction in diversity of citizenship cases, unless language of the prayer indicates that the recovery sought is in excess of such amount.'
>
> SECTION 2. A maximum amount of recovery prayed may be required by motion, pre-trial conference or interrogatories."

Appellee contends that the purpose of Act 205, *supra,* is

to allow a plaintiff to file his complaint for unliquidated damages in an unspecified amount. It also contends, without citation of authority, that a court of equity should have inherent power to allow a victim of fraud to recover judgment against an admitted wrongdoer for the full amount of the fruits of his fraudulent activity. We disagree with both contentions.

It should here be pointed out that we are not dealing with a trial of this case upon the merits, because in those instances the trial courts are given the discretion of permitting the pleadings to be amended to conform to the proof, Ark. Stat. Ann. § 27-1160 (Repl. 1962). We are here dealing with a judgment by default which is a type of forfeiture because of a defendant's failure to plead within the time allowed. See *Walden* v. *Metzler*, 227 Ark. 782, 201 S.W. 2d 439 (1957). In *Kerr* v. *Kerr*, 234 Ark. 607, 353 S.W. 2d 350 (1962), we pointed out that the latitude ordinarily allowed in pleading upon a trial on the merits is not allowed in the instance of a judgment by default. In doing so we stated the applicable law in this language:

> "A judgment for plaintiff by default must strictly conform to, and be supported by, the allegations of the petition or complaint, a closer correspondence between pleading and judgment being necessary than after a contested trial. Defendant's default does not enlarge or broaden plaintiff's claim and rights under the allegations of the petition; nor may the allegations of the petition be enlarged by any evidence offered or introduced as confirmation of the default judgment."

Furthermore, in *Lowery, Administrator* v. *Yates*, 212 Ark. 399, 206 S.W. 2d 1 (1947), we pointed out that before an original complaint could be amended in a matter of substance it would be necessary for the plaintiff to obtain a second service upon the defendant to afford him an opportunity to answer and make defense. Other courts take substantially the same view. See *Pruitt* v. *Taylor*, 247 N.C. 380, 100 S.E. 2d 841 (1957). In the last mentioned case, the North Carolina Supreme Court said:

> "It would do violence to one's sense of justice to say that defendant, having consented to the assessment of damages not in excess of a stipulated amount, had, by

that consent, agreed that larger damages might be assessed."

When the declaration of the complaint alleging that "Billy Dean Starks defrauded plaintiff of a sum not less than Six Hundred and Thirty Thousand Dollars ($630,000.00)" is considered under the rule requiring strict conformity to the allegations of the pleadings as our cases hold that it must be in awarding a default judgment, it at once becomes obvious that the complaint cannot be construed as one asking for a judgment in excess of $630,000.00. Act 205, *supra*, certainly did not affect the construction that should be given to a complaint upon the entry of a default. Furthermore, we do not construe Act 205, *supra*, as authorizing a default judgment to be entered upon a complaint for unliquidated damages in an unspecified amount. After all, Act 205, *supra*, does still require "a demand for the relief to which the plaintiff considers himself entitled."

Courts of equity are usually accorded a great deal of leniency in matters of procedure or discretion when a trial is had upon the merits, however, as can be seen from *Kerr v. Kerr, supra*, and *Lowery, Administrator v. Yates, supra*, courts of equity have no greater power in awarding default judgments upon amended complaints than does a court of law.

From the foregoing discussion, it follows that the trial court erred in awarding a judgment against appellant in excess of $630,000.00. If appellee wishes to enter a remittitur within 15 days for the amount in excess of $630,000.00 the judgment will be affirmed as modified. Otherwise, the judgment will be reversed and remanded to permit the pleadings to be amended as desired.

Affirmed as modified on condition of remittitur.

HARRIS, C.J., and FOGLEMAN and HOLT, JJ., dissent.

CARLETON HARRIS, Chief Justice, dissenting. At the outset, let it be said that I disagree with the majority that the legislative act in question does not permit the granting of the judgment against Starks in the amount of $934,915.61. I consider the act entirely valid and feel that it authorized the procedure followed in this case. After all, there was no way for appellee to know at the time the suit was filed how much

money had been taken from the Pension Fund by fraud, i.e., the damages sought were unliquidated.

This suit against Starks was filed on October 27, 1972. An amended complaint was filed and summons issued out of state on October 31, 1972. No answer was filed by Billy Dean Starks, though the record reflects that a motion to quash the service on this defendant was filed on December 6, 1972. This motion does not appear in the record and accordingly the wording of same, and the reason for the assertion that service should be quashed, is unknown. On January 11, 1973, the court denied the motion, and also denied a motion filed on January 26, 1973 by Starks to plead out of time. (This motion likewise does not appear in the record.) The order of denial was dated January 30, 1973. The court then held that Billy Dean Starks was in default "and that a default judgment in favor of plaintiff be entered against him after a hearing to determine damages."

The hearing as to the amount to be awarded was conducted on May 17, 1973, at which time the judgment recites:

"On this day this cause comes on to be heard, plaintiff appearing by its attorneys, Wright, Lindsey & Jennings, and defendant, Billy Dean Starks, appearing by his attorneys, Carpenter, Finch & McArthur, and the court having heard testimony, arguments, and written briefs of counsel and being fully advised, finds:"

According to the record, it was stipulated that the summons was properly issued and Starks was properly served, but failed to appear or plead within the time allowed by law. On May 17 (when the amount of judgment was rendered) *both* sides were represented by counsel. The plaintiff (appellee herein) offered documents and presented testimony of five individuals to sustain the issues and the parties agreed under the stipulation that the testimony and documents met appellee's burden of proof, and *established* that Starks, while acting in a fiduciary capacity, defrauded appellee of the sum of $934,915.61. It was further stipulated that Starks "did not raise by motion, pre-trial conference, interrogatories, or any other pleading the issue" of whether appellee could recover judgment against Starks for any amount in excess of $630,-000. This issue was first called to the attention of the trial

court at this hearing held on May 17, 1973. "Starks never requested plaintiff [appellee] to state the maximum amount of recovery plaintiff was seeking."

Starks was represented by counsel before the judgment was ever entered. While the record reflects that five witnesses testified, it is not shown either in the judgment, or the stipulation, whether these witnesses were cross-examined by Starks' attorneys, but one thing is certain—they had such a right and the opportunity!

The facts in the North Carolina case of *Pruitt* v. *Taylor*, 247 N. C. 380, 100 S. E. 2d 841, cited by the majority, are quite different from the situation at bar. In the first place, in *Pruitt*, an amendment to the compalint was made while the plaintiffs were offering evidence with respect to the amount of damage, such amendment being allowed in order that the complaint might "conform to the proof". This action by the trial court was the basis for the reversal of the judgment by the North Carolina Supreme Court, but I desire to point out that there, the defendant had no notice of the amendment until after the verdict was rendered, judgment entered, and execution had issued. As herein pointed out, this is not the situation in the case before us. The complaint itself pointed out by its language of "not less than $630,000" that very likely a larger amount was due to the plaintiff. Starks was well aware *before* any judgment was ever rendered that a greater amount was being claimed, and through his attorneys *had every opportunity to cross-examine witnesses offered by plaintiff, or to furnish evidence on his own behalf.* In relying upon *Pruitt,* the majority overlook the North Carolina statute which flatly states that the relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in his complaint, and an additional statute further provides that the complaint must contain a demand for the relief to which the plaintiff supposes himself entitled, then stating, "If the recovery of money is demanded, the amount must be stated." Such a provision, of course, is completely contrary to the Arkansas statute here in litigation.

Returning to our own cases, the rights of Starks at the hearing on damages which I mentioned in the preceding paragraphs are fully supported by Arkansas case law.

In *Ferri* v. *Braun*, 236 Ark. 329, 366 S.W. 286, Braun and wife filed a suit against Ferri alleging damages growing out of an automobile collision. Ferri failed to answer and judgment was rendered against him for the total amount asked in the complaint. Ferri appealed, and it developed that no testimony had been presented by the Brauns before the trial court nor were any witnesses offered in their behalf. This court, after first pointing out that there must be evidence to support an award of damages in a default judgment, went on to use language which I deem to be entirely pertinent to the issue at hand, as follows:

> "Although the defendant, appellant, failed to file an answer, he had the right to cross-examine witnesses giving testimony as to damages and he had the right to introduce testimony in mitigation of damages. In other words, he had the right to contest the element of damages; it necessarily follows that he has the right to question on appeal the sufficiency of the evidence to support the amount of damages awarded."

In *Clark* v. *Collins*, 213 Ark. 386, 210 S.W. 2d 505, Clark filed no answer, was held in default, and a hearing was subsequently set for the purpose of fixing the amount of damages. A motion for leave to file an answer was denied and Clark then filed a motion setting out that he had been denied permission to file an answer; further, that he was entitled to cross-examine plaintiff's witnesses on the question of damages and to introduce proof before the jury for the purpose of minimizing damages that might be awarded to the plaintiff. He prayed that "he be permitted and granted opportunity to cross-examine the witnesses of the plaintiff and introduce proof to minimize damages of said plaintiff before the jury herein." The motion was denied by the trial court and an appeal was taken to this court. In reversing this holding by the trial court, the late Justice Minor W. Millwee, speaking for the Arkansas Supreme Court, said:

> "In the early cases of *Thompson* v. *Haislip*, 14 Ark. 220, and *Mizzell, et al.* v. *McDonald, et al.*, 25 Ark. 38, this court laid down the rule that in a hearing to determine the amount of damages after default, a defendant has a right to cross-examine the plaintiff's witnesses and to introduce evidence in mitigation of damages. In the last

case cited Chief Justice Walker, speaking for the court. said: 'As regards the first question, the defendants, by failing to plead in bar, confessed the plaintiffs' rights to recover damages, but not the amount of damages claimed in the declaration; because, if such is the effect of a judgment by default, then there would be no necessity for calling a jury to inquire of damages, and judgment would, without the intervention of a jury, be rendered for the amount of damages set forth in the plaintiff's declaration. It must therefore follow, that although the assumpsit to pay for the goods, averred to have been sold and delivered is admitted by the default, and no longer an open question for contest, such is not the case as regards the amount of damages to be recovered. In the case of *Thompson* v. *Haislip*, 14 Ark. 220, this court recognized this rule, and held that, upon a writ of inquiry of damages, the defendant had a right to cross-examine a witness introduced by the plaintiff, and that it was error to refuse such permission. And we think that, upon principle, the decision in that case is alike applicable to this. The open question before the jury was as to the amount of the damages to be assessed, and if the defendant be permitted (as we have held he should be) to cross-examine a witness introduced by the plaintiff, for the purpose of reducing the amount of damages, we think, for the same reason and upon principle, he should be permitted to introduce evidence for the purpose.' "

Let it also be remembered that it is not necessary that a prayer in a chancery case set out the specific relief sought. We have held that where a prayer for a judgment was not included in the specific relief sougnt, the chancery court was warranted in rendering such a judgment, in the absence of the element of surprise, because the facts alleged and proved warranted the rendition of the judgment. See *Jackson* v. *Jackson,* 253 Ark. 1033, 490 S.W. 2d 809, and cases cited therein.

The purpose of the law is to see that justice is done. How has appellant been deprived of that essential right in the trial proceedings of this case? Let it be recalled that there is no contention here that the court erred in not permitting Starks to file an answer out of time; nor is there any contention that

he was not given the opportunity to present each and every defense he might have to the granting of this particular judgment. He admits that proof offered by the North Little Rock, Arkansas Policemen's Pension and Relief Fund, as stated in the stipulation, *"established that Billy Dean Starks* (my emphasis), while acting in a fiduciary capacity, committed fraud by which he *defrauded the North Little Rock, Arkansas, Policemen's Pension and Relief Fund of Nine Hundred Thirty-Four Thousand Nine Hundred Fifteen and 61/100 Dollars ($934,915.61)."* (My emphasis)

It should be quite evident by now that I disagree wholehartedly with the majority opinion and would uphold the decree of the chancery court in its entirety.

FOGLEMAN and HOLT, JJ., join in this dissent.