Giles H. GIBSON et al *v.* Nora Glasgow
PICKETT et al

74-61                                        512 S.W. 2d 532

Opinion delivered July 22, 1974
[Rehearing denied September 9, 1974.]

*Keith, Clegg & Eckert*, for appellants.

*Woodward & Kinard, Ltd.*, for appellees.

JOHN A. FOGLEMAN, Justice. In this "quiet title" action brought by appellees, there is no dispute about the facts. The lands involved are described as the SW ¼ of SW ¼ of Section 24, Township 19 South, Range 24 West in Lafayette County. The basic controversy turns upon the construction of a deed dated May 25, 1944, from Giles H. Gibson and wife to Oce S. Griffin. Appellees based their suit upon their contention that a mineral reservation therein was void because it was too indefinite and uncertain to be effective. On the other hand, appellants contended that the Gibsons reserved all the oil, gas and mineral rights they owned and that no mineral interest passed to Griffin by this deed. The chancellor held that the deed did reserve an undivided ½ interest which had not been severed from the surface but not a reversionary interest which the Gibsons owned in a ½ "term" mineral interest. expiring in 1950 in the absence of production, conveyed by a prior owner in 1935. It had been stipulated that there had been no production prior to 1950. The chancery court held that Griffin owned the reversionary interest in 1945 when he conveyed to G. B. Pickett, the deceased father of appellees, reserving ½ of any mineral interest he (Griffin) owned, so that, when the term interest expired in 1950, a ½ mineral interest was owned by Griffin and Pickett equally.

Appellants assert that the chancellor erred in holding that Gibson reserved the ½ unsevered mineral interest but not the reversionary interest in the remaining ½ interest. Appellees contend that the reservation in the Gibson-Griffin deed should have been declared void for ambiguity and that the court erred in finding that this deed did not convey all mineral rights owned by Gibson. They say that, in any event, no more than ½ of the minerals were reserved.

It is essential to an understanding of the issues that the chain of title be set out. Insofar as pertinent, it is as follows:

J. R. Jester was the holder of the fee simple title to the W ½ SW ¼ of Sec. 24.

29 May 1920, mineral deed from J. R. Jester and wife to J. W. Allen, conveying a ½ mineral interest in the NW ¼ SW ¼ T. 19 S., R. 24 W., filed for record on 16 April 1923.

3 June 1935, warranty deed from J. R. Jester and wife to First Congregational Church, conveying the W ½ SW ¼ of Sec. 24, filed for record on Jan. 13, 1936.

11 Dec. 1935, instrument entitled "Sale of Mineral Rights" from J. R. Jester to Harry J. Naert, conveying ½ mineral interest in SW ¼ of SW ¼ having the following habendum clause, "To Have and To Hold, said described property unto said purchasers their heirs and assigns for a period of Fifteen Years (15) or as long thereafter as oil or gas are produced in paying quantities," filed for record on Dec. 20, 1935.

4 June 1943, First Congregational Church to J. E. Searcy conveying the W ½ SW ¼ of Sec. 24, containing the following warranty clause: "And First Congregational Church hereby covenants with the said J. E. Searcy that it will forever warrant and defend the title to said lands against all claims whatever, except as to any mineral rights which the corporation has no title or claim against and except as to rights of the parties in possession."

7 Aug. 1943, special warranty deed from J. E. Searcy to Giles H. Gibson with warranty "against all claims or encumbrances done or suffered by us but against none other."

25 May 1944, warranty deed from Giles H. Gibson to Oce. S. Griffin, conveying: "The West Half (W ½) of the Southwest Quarter (SW ¼) of Section Twenty-four (24), Township Nineteen South (19S) Range Twenty-four West (24) containing in all 80 acres more or less, except a reservation of an undivided One-Half Interest in all Oil, Gas and Mineral Rights, including the Right of Ingress and Egress thereto (being One-Half of the Mineral Rights that were conveyed to the First Congregational Church in a Deed dated June 3rd 1935

and Recorded in Book C—, Page 183) which is reserved by the Grantor herein." The habendum clause reads: "To Have and To Hold the same unto the said Oce S. Griffin and unto his heirs and assigns forever, with all appurtenances thereunto belonging except as mineral rights mentioned in Deed recorded in Book A-8 at page 205." The warranty clause reads: "And we hereby covenant with said Oce S. Griffin that we will forever warrant and defend the title to said lands against all claims whatever, except Mineral Rights."

16 July 1945, warranty deed from Oce S. Griffin to G. B. Pickett conveying "The Southwest Quarter (SW ¼ ) of the Southwest Quarter (SW ¼ ) of Section Twenty-four (24), Township Nineteen (19) South Range Twenty-four (24) West, containing forty (40) acres more or less. The Grantor hereby reserved one-half ( ½ ) of all Oil, Gas, and Mineral rights that is owned by him on this date; also it is understood, that there exist one or more reservations by previous grantor or grantors. It is intended that the grantee (G. B. Pickett) shall have one-half ( ½ ) of any and all Oil, Gas, and Mineral rights that is owned by the grantor (Oce. S. Griffin) at the time of this sale, including the right of ingress and egress."

The basic rule to be applied in the construction of deeds, as with other contracts, is to ascertain and give effect to the real intention of the parties, particularly of the grantor, as expressed by the language used when not contrary to settled principles of law and rules of property. *Jenkins* v. *Simmons*, 241 Ark. 242, 407 S.W. 2d 105, *Dent* v. *Industrial Oil & Gas Co.*, 197 Ark. 95, 122 S.W. 2d 162; *Chicago, R.I. & P. R. Co.* v. *Olson*, 222 Ark. 828, 262 S.W. 2d 882; *Coffelt* v. *Decatur School District*, 212 Ark. 743, 208 S.W. 2d 1; *McBride* v. *Conyers*, 212 Ark. 1034, 208 S.W. 2d 1006; *Desha* v. *Erwin*, 168 Ark. 555, 270 S.W. 965. The courts will resort to rules of construction, as distinguished from rules of property, only when the meaning of the deed in question or the intention of the parties is ambiguous, uncertain or doubtful. *Coffelt* y. *Decatur School District*, supra; see also *Jenkins* v. *Ellis*, 111 Ark. 220, 163 S.W. 524; *Beasley* v. *Shinn*, 201 Ark. 31, 144 S.W. 2d 710; *Davis* v. *Collins*, 219 Ark. 948, 245 S.W. 2d 571; *Doe* v. *Porter*, 3 Ark. 18.

The intention of the parties must be gathered from the four corners of the instrument itself, if that can be done, and when so done, it will control. *Chicago, R.I. & P. R. Co.* v. *Olson,* supra; *McBride* v. *Conyers,* supra; *Luster* v. *Arnold,* 249 Ark. 152, 458 S.W. 2d 414; *Carter Oil Co.* v. *Weil,* 209 Ark. 653, 192 S.W. 2d 215; *Luther* v. *Patman,* 200 Ark. 853, 141 S.W. 2d 42. See also *Cannon* v. *Owens,* 224 Ark. 614, 275 S.W. 2d 445. The intention of the parties is to be gathered, not from some particular clause, but from the whole context of the agreement. *Schnitt* v. *McKellar,* 244 Ark. 377, 427 S.W. 2d 202; *Arkansas Power & Light Co.* v. *Murry,* 231 Ark. 559, 331 S.W. 2d 98; *Wilson* v. *Stearn,* 202 Ark. 1197, 149 S.W. 2d 571; *Dent* v. *Industrial Oil & Gas Co.,* supra. It is only in case of an ambiguity that a contract is construed most strongly against the party who prepared it, for the grantor in a deed. *Arkansas Power & Light Co.* v. *Murry,* supra; *Jenkins* v. *Ellis,* supra; 26 CJS 813, Deeds Sec. 82; 26 CJS 1012, Deeds Sec. 140 (2). Even then, the rule is one of last resort to be applied only when all other rules for construing an ambiguous deed fail to lead to a satisfactory clarification of the instrument and is particularly subservient to the paramount rule that the intention of the parties must be given effect, insofar as it may be ascertained, and to the rule that every part of a deed should be harmonized and reconciled so that all may stand together and none be rejected. *Wynn* v. *Sklar & Phillips Oil Co.,* 254 Ark. 332, 493 S.W. 2d 439; 26 CJS 1012, Deeds Sec. 140 (2). See also *Jefferson Square, Inc.* v. *Hart Shoes, Inc.,* 239 Ark. 129, 388 S.W. 2d 902.

Keeping these well-established rules in mind, we turn to the instrument in question. No difficulty is apparent upon the face of the instrument itself. Yet, we are not only permitted, we are required to examine the instruments to which reference is made in the deed in question because the terms and conditions of those deeds were made a part of the deed to be construed. *Doe* v. *Porter,* 3 Ark. 18. See also *International Graphics, Inc.* v. *Bryant,* 252 Ark. 1297, 482 S.W. 2d 820; *Jackson* v. *Lady,* 140 Ark. 512, 216 S.W. 505; *Snyder* v. *Bridewell,* 167 Ark. 8, 267 S.W. 561; *Dormon Farms Co.* v. *Stewart,* 157 Ark. 194, 247 S.W. 778. When we do, it would appear at first blush that all the mineral rights were purportedly conveyed to the First Congregational Church on

June 3, 1935, there having been no exception from the warranty clause. See *Maloch* v. *Pryor*, 200 Ark. 380, 129 S.W. 2d 51; *Osborn* v. *Texas Oil & Gas Co.*, 103 Ark. 175, 146 S.W. 122. But the deed was not recorded until January 13, 1936. In the meanwhile, Jester had conveyed 1/2 of the mineral interest in the SW 1/4 of the SW 1/4 to Naert for a period of 15 years. In 1920, he had conveyed 1/2 of the minerals in the NW 1/4 NW 1/4 to J. W. Allen in perpetuity. Consequently, the conveyance to the church appears to have effectively conveyed only 1/2 of all mineral rights in the NW 1/4 SW 1/4 and 1/2 of those rights together with the reversionary interest in the remaining 1/2 interest in the SW 1/4 SW 1/4. Thus, the parenthetical clause as worded, seems ambiguous itself and appears to be inconsistent with a strict interpretation of the general clause which it purportedly modifies, as it refers to more than 1/2 the mineral rights in either event. The habendum clause refers us to the deed from the church to Searcy, in which the only mention of mineral rights is the exception from the warranty of any mineral rights to which the church had no title or claim, presumably in recognition of the superiority of the conveyances to Naert and Allen.

If indeed the clause is ambiguous, as we find it to be, the courts must put themselves as nearly as possible in the position of the parties to the deed (particularly the grantor) and interpret the language in the light of attendant circumstances. *Schnitt* v. *McKellar*, 244 Ark. 337, 427 S.W. 2d 202; *Wynn* v. *Sklar & Phillips Oil Co.*, supra; *Schweitzer* v. *Crandell*, 172 Ark. 667, 291 S.W. 68; *Jackson* v. *Lady*, 140 Ark. 512, 216 S.W. 505; *St. Louis San Francisco Ry. Co.* v. *White*, 199 Ark. 56, 132 S.W. 2d 807. In this case, we can only do that by viewing the instruments in the chain of title because we have no other evidence before us. In endeavoring to ascertain the intention of the parties, we look not only to the deed but to the relations of the grantor to the property. *Jackson* v. *Lady*, supra; *Holmes* v. *Countiss*, 195 Ark. 1014, 115 S.W. 2d 553. At the time of the conveyance from Gibson to Griffin, Gibson owned 1/2 of the minerals in the W 1/2 SW 1/4 plus a reversionary interest in the remaining 1/2 in the SW 1/4 SW 1/4. The warranty clause in the deed excepted mineral rights, so it cannot be presumed that there was any intention to convey all the mineral rights not reserved. The habendum clause ex-

cepted mineral rights mentioned in the deed from the church to Searcy, which had excepted from its warranty any mineral rights to which it had no claim, i.e., the 1/2 mineral interest conveyed to Allen in 1920 in the NW 1/4 SW 1/4 and the 1/2 interest in the SW 1/4 SW 1/4 conveyed to Naert. It might seem logical to say that the intent of Gibson was to reserve the unsevered 1/2 of the minerals in the SW 1/4 SW 1/4 and to convey to Griffin the reversionary interest, upon the premise that if he had intended to reserve all the mineral rights owned by him, he would have simply said so without resorting to all the descriptive language employed in the deed. But we cannot resolve the matter upon this simple premise, logical as it may seem.

Appellants contend that Gibson intended to reserve all the mineral rights he owned and that the explanatory parenthetical clause was added to make this intention clear. They say the description in the deed should be read as if it excepted an undivided one-half interest in all oil, gas and mineral rights, including the right of ingress and egress thereto, being 1/2 or the mineral rights that were conveyed to the First Congregational Church of 1/2 mineral interest plus the reversionary interest in the 1/2 mineral interest sold to Naert, which is reserved by the grantor herein. Their version eliminates the parentheses appearing in the deed. It also takes the parenthetical clause to refer to the interest *effectively* conveyed instead of that *purportedly* conveyed to the church. The latter possible construction of that clause would be consistent with the remainder of the exception and reservation, the first two words of the parenthetical clause itself and the chancellor's holding. Appellants contend that any construction other than that suggested by them violates the rule that no part of a deed will be rejected except when completely irreconcilable with other clauses of the deed. See *Wynn* v. *Sklar & Phillips Oil Co.*, 254 Ark. 332, 493 S.W. 2d 439. It is the duty of the courts to give effect to every word, sentence and provision of a deed, where possible to do so and give effect to the intention of the parties. *Jackson* v. *Lady*, 140 Ark. 512, 216 S.W. 505; *Doe* v. *Porter*, 3 Ark. 18. When a deed is ambiguous, however, the primary rule of construction comes into play, i.e., that all parts of the deed should be harmonized insofar as possible. *Jackson* v. *Lady*, supra; *Holmes* v. *Countiss*,

195 Ark. 1014, 115 S.W. 2d 553. The alternate construction above suggested might harmonize the parenthetical clause with the general part of the exception and reservation, but not with the habendum clause.

If we had not abandoned the rule of construction that, in case of conflict between the granting and the habendum clauses, the granting clause governs we might say that the matter was settled by construing the parenthetical clause to be consistent with a reservation of only 1/2 of the mineral interests and not the reversionary interest. But this is no longer the rule. We must, if possible, reconcile and harmonize the two clauses, along with any other clauses of the instrument. See *Weir* v. *Brigham,* 218 Ark. 354, 236 S.W. 2d 435; *Carter Oil Co.* v. *Weil,* 209 Ark. 653, 192 S.W. 2d 215; *Beasley* v. *Shinn,* 201 Ark. 31, 144 S.W. 2d 710. And this has always been the rule unless the language of the granting clause was so plain that it could not be misunderstood and the two clauses were clearly and irreconcilably repugnant. See *Jackson* v. *Lady,* supra; *Kenner* v. *State,* 121 Ark. 95, 180 S.W. 492; *McDill* v. *Meyer,* 94 Ark. 615, 128 S.W. 364. The wording of the warranty clause is such that Gibson gave no warranty as to any mineral rights. The habendum clause clearly indicates that Griffin is to have the fee simple title to the lands except for mineral rights mentioned in the deed to the church, i.e., mineral rights to which it had no claim. It has long been recognized that where it appears from the whole conveyance and attendant circumstances that the grantor intended to enlarge, restrict or repugn the conveying clause by the habendum, the latter must control, as an addendum or proviso to the former. *Luther* v. *Patman,* 200 Ark. 853, 141 S.W. 2d 42. Since it is the office of the habendum clause to explain or define the extent of the grant, it is not to be rejected unless there is a clear and irreconcilable repugnance between the estate granted and that limited in the habendum. *McDill* v. *Meyer,* supra. And the words of the habendum will prevail if they represent the true intent of the grantor as expressed by the deed as a whole. *Weatherly* v. *Purcell,* 217 Ark. 908, 234 S.W. 2d 32.

Giving the parenthetical clause the meaning ascribed to it by appellants would make it harmonious with the haben-

dum clause. It would also be consistent with the warranty clause. On the other hand, the alternate construction would be in conflict with the habendum clause, but not necessarily with the warranty clause. In order to reach the conclusion reached by the trial court it would be necessary to reject either the parenthetical clause or the habendum clause, or both. This we should not do. Language of a contract as a whole, should be construed to make apparently conflicting provisions reasonable and consistent if possible to do so. *Schnitt* v. *McKellar,* 244 Ark. 377, 427 S.W. 2d 202. Accordingly, we hold that the parenthetical clause served to modify the general language of the description of the exception from the grant and, when read with the habendum clause, described a reservation by Gibson of all the mineral rights he owned.

On cross-appeal, appellees contend that the court erred in not granting a default judgment against M. M. Valerius Royalty Corporation, the grantee in a deed by J. F. Warmack (a grantee of Gibson in a 1969 mineral deed) conveying a 1/8 mineral interest in the W 1/2 SW 1/4 of Sec. 24. In their petition to quiet title, appellees claimed ownership of W 1/2 interest in oil, gas and minerals in the SW 1/4 SW 1/4, subject to an oil and gas lease owned by M. M. Valerius Oil Royalty Corporation. This corporation was named as a defendant and served by registered letter dated July 20, 1972 and received by the corporation on July 21, 1972, apparently pursuant to Ark. Stat. Ann. § 27-340 (Repl. 1962). Appellees made a motion for default judgment on October 11, 1972, praying that the mineral deed from Warmack to Valerius be declared void. This deed and the one from Gibson to Warmack were attached to the motion. On October 12, 1972, Valerius entered its appearance, requesting 10 days within which to plead and that the motion for default be denied. Valerius alleged that due to a misunderstanding on its part, no arrangements for legal representation were made until October 4, 1972, that no prejudice would result by the delay and that allowing Valerius to plead and defend would be in the interest of justice. Appellees' motion was overruled, as was their subsequent motion to strike the answer filed by Valerius. Mere failure to arrange for representation would not constitute unavoidable casualty, excusable neglect or other just cause for denial of a default judgment. If nothing else

were involved, we should hold that there was reversible error. *Kohlenberger* v. *Tyson's Foods,* 256 Ark. 584, 510 S.W. 2d 555 (1974). But there is more. Appellees' original pleading did not specifically seek the cancellation of the conveyances under which Valerius claims. To the contrary they admitted that their ownership was subject to an "Oil and Gas Lease" vested in Valerius. We cannot say that Valerius should have known, without question, that appellees' claimed their rights were superior to those of Valerius or that cancellation of the instrument under which it claimed was sought before October 11, 1972, when the motion for default judgment was filed. In effect, the motion for default judgment could be taken to constitute an amendment of appellees' original petition in a matter of substance. As a matter of fact the mineral deed from Warmack to M. M. Valerius Royalty Corporation which appellees sought to have cancelled by the default judgment was not even mentioned in their original complaint. If the amendment was in a matter of substance Valerius was entitled to answer. *Kohlenberger* v. *Tyson's Foods,* supra; *Starks* v. *N.L.R. Policeman's Pension & Relief Fund,* 256 Ark. 515, 510 S.W. 2d 305 (1974). Even though the discretion of the trial judges to permit an answer after the expiration of the statutory time after service has been severely limited, we cannot say that there was an abuse of discretion here or that the neglect of Valerius was not excusable, under the circumstances.

Appellees also contend that the chancellor erred in refusing to grant their motion for summary judgment. A sufficient answer to this contention is that no appeal lies from the denial of a summary judgment. *Bawcom* v. *Allis-Chalmers Credit Corporation,* 256 Ark. 569, 508 S.W. 2d 741 (1974).

Appellees also contend that the reservation of mineral rights in the Gibson deed is so ambiguous that it is void, relying upon *Parker* v. *Cherry,* 209 Ark. 907, 193 S.W. 2d 127. Here the question is not whether the reservation was sufficiently described to be effective. It is whether the reservation was of only 1/2 of the mineral interest or all of the mineral interest owned by grantee Gibson. A description will not be held void for uncertainty if by any reasonable construction it may be made available and if the descriptive words furnish a key to

identification, nothing more is required. This principle was recognized as applicable to reservations in *Parker*. See also *Rye* v. *Baumann*, 231 Ark. 278, 329 S.W. 2d 161.

Nor do we find merit in appellees' contention that this is essentially an action for reformation, and as such, is at least tardily sought. In this respect, the case is not essentially different from *Stewart* v. *Warren*, 202 Ark. 873, 153 S.W. 2d 545. There we held that a limitation on a grant of a mineral interest expressed only in the habendum clause of the deed in question should be given effect under the rule of *Beasley* v. *Shinn*, supra, that the intention of the parties should be gathered from the entire document rather than from the granting clause. We held that the doctrine of laches was inapplicable for two reasons. First, we affirmed the decree of the trial court which had actually refused reformation but had nevertheless upheld the limitation by considering the face of the deed in determining the intention of the parties. And then, we said, it was not the duty of the parties claiming the benefit of the limitation to seek reformation until the limitation upon which they relied was questioned. We may say the same about this case as to this contention of appellees.

The decree is reversed on direct appeal and affirmed on cross-appeal and the cause is remanded for entry of a decree consistent with this opinion.

GEORGE ROSE SMITH and HOLT, JJ., dissent.

GEORGE ROSE SMITH, Justice, dissenting. Although the various rules of construction relied upon by the majority are designed to give effect to the intention of the parties, it does not seem to me that they accomplish that purpose in this case. The pivotal 1944 deed from the Gibsons to Griffin was obviously not drawn by a lawyer. It is impossible to be certain what was intended by the layman who prepared that deed, but I think the chancellor's interpretation of it is preferable to that adopted by the majority.

The Gibsons then owned half the minerals in the 80-acre tract that was conveyed. They also owned a reversionary interest in the other half of the minerals in the south forty acres,

but that interest would not be of any value if oil or gas should be produced in paying quantities during the 15-year term that had been granted to Naert in 1935. In view of that doubtful situation the Gibsons would have been understandably reluctant to give a warranty deed to that mineral interest. That explains why the Gibsons excepted the mineral rights from the warranty clause in their deed to Griffin.

The clearest language in the Gibson-Griffin deed, as far as the minerals are concerned, is the following: ". . . except a reservation of an undivided One-Half Interest in all Oil, Gas and Mineral Rights . . . which is reserved by the Grantor herein." Even for a layman it would have been a simple matter to reserve the other one-half interest in the minerals in the south forty if such a reservation had been intended. Absent such language, I am not convinced that the draftsman of the deed used the other highly ambiguous clauses as a roundabout way of accomplishing that result. Consequently I would affirm the decree in its entirety.

HOLT, J., joins in this dissent.