**Shirley GASTINEAU and Lynn Gastineau Crocker, Plaintiffs-Respondents,**

v.

**SUMMIT REALTY COMPANY, a Missouri Corporation, and P.N. Hirsch & Co. Stores, Inc., a Missouri Corporation, Defendants-Appellants.**

No. WD33844.

Missouri Court of Appeals,
Western District.

April 5, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
May 31, 1983.

William G. Mays, II, Holt, Krumm, Hamilton, Mays & Shryock, Columbia, for defendants-appellants.

David Brydon, Johnny K. Richardson, Hawkins, Brydon & Swearengen, P.C., Jefferson City, for plaintiffs-respondents.

Before WASSERSTROM, P.J., and TURNAGE and CLARK, JJ.

WASSERSTROM, Presiding Judge.

Plaintiffs sue here for an injunction to enforce a restrictive covenant in their shopping center lease, protecting them against competition in the operation of their retail jeans shop. Contrary to defendants' contentions, we hold: (1) the restrictive covenant prohibits the sale of jeans as conducted by defendant P.N. Hirsch & Co. Stores, Inc. ("Hirsch"); (2) the injunctional order was sufficiently definite to comply with the requirements of Rule 92.02(d); and (3) defendant Hirsch is not protected as the alleged successor to the rights of the prior occupant of its space.

In September 1978, plaintiffs leased space in the Summit Plaza Shopping Center from defendant Summit Realty Company ("Summit Realty") for the operation of a retail jeans shop and did open their store under the name Denim Post in February 1979, offering denim pants and accessories consisting of blouses, shirts, hats, socks and sweaters which go with denim jeans. At that time, Summit Stores, Inc. already had a lease for a variety store in the shopping center and had been operating a store there under the name Summit Variety Store since October 1, 1977, offering jeans among other items for sale to the retail public. Plaintiffs' lease contained a protective clause which provided as follows:

"37. During the term of this Lease the LESSEE shall have the exclusive and sole right to operate a retail jeans shop in the shopping center, no other retail store in the shopping center, with the exception of the Summit Variety Store, shall be allowed to devote any of its sales area as a retail jeans shop."

Summit Stores began to run into financial difficulty and ceased doing business in the shopping center on December 24, 1980. Discussions then took place between Hutchings on behalf of Summit Realty and Martin on behalf of Summit Stores with respect to what disposition would be made of the

Summit Variety Store space. Martin testified with respect to this subject as follows:

"Q. Did you, at any time, assign or transfer any of your rights in that lease to anyone else?

A. No.

. . . .

Q. Did you have any conversations with anyone representing Summit Realty Company about assigning or transferring your lease and specifically the right to sell jeans in the shopping center?

A. That may have been mentioned, but I really didn't have that much to do with it because I felt the store was going down anyway. I really don't quite remember that, but I think there were conversations about looking for other tenants which he did mention.

Q. When you say 'he,' who are you referring to?

A. Bill Hutchings.

. . . .

Q. Mr. Martin, do you know whether there was any effort to sublease your rights in this lease to any other party?

A. Well, Yes. He was out looking for other tenants.

I think the point I want to make is that at that time I really didn't care whether someone was found because the corporation was defunct anyway, and it didn't make that much difference.

But, yes, I know there was efforts made for other tenants.

. . . .

Q. You became aware of the fact Mr. Hutchings had obtained P.N. Hirsch sometime subsequent to the last discussion you had?

A. Yes.

Q. Did you inform Mr. Hutchings you did not want him to put them in that particular space or specifically prohibited him from subleasing to them?

A. No.

Q. In fact, do you know of any corporate officers of Summit Stores, Incorporated objected to this tenant taking over this space?

A. No. It didn't make any difference to us."

Hutchings testified with respect to this subject as follows:

"Q. Did you inquire as to the operator-manager of the store, Mr. Ed Martin, as to the circumstances of his operation there?

A. Yes. And he said—he told me they were definitely going to go out of business in the variety, they were going to close up the variety store; and I had known, because he asked me about it before, about the possibility of subleasing that space. When it became apparent he was going to close up, he did tell me to go ahead and try to find a subtenant."

Hutchings did get in touch with Hirsch and a document denominated "Sub-lease" was executed on March 16, 1981, between Summit Realty and Hirsch. Hirsch concedes that at the time it entered into that arrangement, it knew of the restrictive covenant paragraph No. 37 in the plaintiffs' lease.

Soon thereafter Hirsch began the operation of a variety or junior department store, selling to the public shoes, men's, women's, children's and boys' clothing, small hardware and appliance items, garden supplies, home furnishings of all types, even lawn mowers. As part of that operation, Hirsch set up a separate section in which it sold jeans.

Plaintiffs made complaint through their attorney to Summit Realty concerning the sale of jeans by Hirsch. Their principal objection was and is that Hirsch sold jeans as a loss leader, making plaintiffs appear to be overpricing their merchandise to the public. When plaintiffs' complaints to Summit Realty proved unavailing, this suit followed.

I.

*Violation of the Covenant*

■ Defendants devote their argument under this heading principally to a contention that Hirsch did not conduct a "jeans shop," in violation of that part of paragraph

37 of plaintiffs' lease which granted them an exclusive right to operate "a retail jeans shop in the shopping center." If that portion of paragraph 37 were the only provision in the restrictive covenant, there would be room for debate. However, the last part of paragraph 37 cannot be ignored which prohibits any other tenant in the shopping center (except Summit Variety Store) from being allowed "to devote any of its sales area as a retail jeans shop."

Plaintiff Shirley Gastineau testified without contradiction that Hirsch did have a section of its store set aside for the sale of jeans. That action clearly constituted a violation of paragraph 37 of plaintiffs' lease.

Defendants in their brief attempt to justify the sale of jeans by Hirsch on the "overlapping" doctrine. That doctrine comes into play in the case of the very common type of restrictive covenant which prohibits a landlord from making any new lease to any new tenant who undertakes to carry on the same or a similar business to that of the protected tenant. *See* Annot. 97 A.L.R.2d 45, 49 (1964). The protective clause here is not of that character. The "overlapping" doctrine is further discussed by 3 Friedman on Leases, Section 28.7 (1978) where a distinction is drawn between "limited exclusives" and "true exclusives." Under that line of demarcation, the clause here falls within the category of "true exclusives." The "overlapping" doctrine is of no assistance to these defendants.

Defendants also seek protection under the ruling in *Friedman Textile Co. v. Northland Shopping Center,* 321 S.W.2d 9 (Mo.App.1959). That case involved a restrictive covenant prohibiting any new tenant who might be "engaged primarily in handling and offering for sale children's merchandise. . . ." The court in that case simply held that the defendant was not engaged "primarily" in the prohibited line of business. *Friedman Textile* is readily distinguishable and does not apply here.

## II.

*Definiteness of the Injunctional Order*

Rule 92.02(d) provides as follows:

"Form and Scope of Injunction or Temporary Restraining Order. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the petition or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

Defendants challenge the trial court injunction as not complying with that rule in the following respects: (1) the order does not set forth the reasons for issuance; (2) the injunction is not specific in its terms; (3) the acts to be restrained are not described in reasonable detail without reference to the petition; and (4) the phrase "retail jeans shop" is ambiguous. None of those challenges are meritorious.

As to the reasons for issuance of the injunction, the court's Findings of Fact, Conclusions of Law and Judgment recites in paragraph 2 the provisions of paragraph 37 of plaintiffs' lease. The judgment then goes on as follows:

"4. On or about the 16th day of March, 1981, defendants entered into a so-called 'sub-lease' and thereafter, P.N. Hirsch & Co. Stores, Inc. opened a store in said Summit Plaza Shopping Center and devoted a portion of its sales area to a retail jeans shop.

5. Both defendants had knowledge of paragraph 37 of the lease between plaintiffs and defendant Summit Realty Company prior to entering into the lease between themselves.

. . . .

7. Defendants have breached paragraph 37 of the lease between plaintiffs and defendant Summit Realty Company by violating plaintiffs' exclusive right to

operate a retail jeans shop in the Summit Plaza Shopping Center."

Those recitals amply stated the reasons for issuance of the injunction.

■ As to specificity and description of the acts to be restrained, the judgment provides:

"WHEREFORE, it is hereby Ordered and Decreed that Judgment be entered in favor of plaintiffs and against defendants and that defendants Summit Realty Company and P.N. Hirsch & Co. Stores, Inc., their officers, agents, employees, appointees, successors and assigns are hereby permanently enjoined and restrained from continuing to violate paragraph 37 of the lease between plaintiffs and Summit Realty Company and in particular, are directed to cease and desist operating a retail jeans shop in the Summit Plaza Shopping Center and devoting any of the sales area in the Summit Plaza Shopping Center to a retail jeans shop . . . ."

That provision of the judgment is amply specific and amply states the acts to be restrained.

■ With respect to the meaning of the phrase "retail jeans shop," neither the trial court nor this court perceives that phrase as being ambiguous. In any event, the specific act involved and decided is that Hirsch cannot continue to set aside a section of its store for the sale of jeans. Having found a violation in that specific respect, the court committed no error in going further and enjoining any other future violation of paragraph 37.

### III.

#### Hirsch as Alleged Successor to Summit Variety Store

■ Defendants say that the lease of Summit Stores preceded that of plaintiffs and therefore paragraph 37 of plaintiffs' lease cannot affect Summit Stores or its successors; and they further say that the exception in paragraph 37 of plaintiffs' lease protects Summit Stores and its successors against the prohibitive effect of that covenant. The fallacy in this whole argument is that Hirsch has not been shown to be a legal successor to Summit Stores.

To establish that successorship, defendants contend that Martin on behalf of Summit Stores authorized Summit Realty to make a sublease on behalf of Summit Stores, and that Summit Realty did so. The facts do not bear out that contention.

The nature of the conversations between Martin and Hutchings, relied upon to establish the agency, do not in fact go that far. The testimony in this regard, which has already been set forth in this opinion, shows no more than a consent by Summit Stores to waive any further rights under its lease and to let Summit Realty do whatever it desired with respect to finding a new tenant. As Martin said in his testimony, "It didn't make any difference to us."

Even more importantly, the transaction between Summit Realty and Hirsch was not, in fact, a "sub-lease", as claimed, but rather it was a direct lease from Summit Realty to Hirsch. The examination of the 18 page document in question shows that only at a very few points were the three letters added to show this transaction as a "sub-lease" rather than a "lease." This addition appears only in the style at the beginning of the document on page 1, and immediately above the signature lines. Elsewhere throughout this lengthy document, the parties are referred to as Summit Realty being the Lessor and Hirsch being the Lessee. No recital of any kind is made with respect to any underlying principal lease, and Summit Realty did not purport to be acting as an agent of Summit Stores rather than principal in its own behalf. It appears quite obvious that the few additions of the letters "Sub" before the word "Lessor" was a mere afterthought and did not in fact reflect the true relationship between the parties to the document.

In support of their position on this point, defendants cite *Jefferson Square, Inc. v. Hart Shoes, Inc.*, 239 Ark. 129, 388 S.W.2d 902 (Ark.1965). That Arkansas opinion is not in point. In that case, a 1960 lease to Hart Shoes, Inc. covenanted against the leasing to any other family shoe store with

the exception of Dan Cohen Company. Dan Cohen Company operated a shoe store until July 1963, when it went into bankruptcy and was allowed to cancel its lease. In August 1963, the landlord permitted Holiday, Inc. to assume the provisions of the Cohen lease. A majority of the Arkansas Supreme Court viewed the restrictive covenant as ambiguous and, based on extrinsic evidence, interpreted it to mean that the reference to "Dan Cohen Company" referred to a *type* of shoe store and that the parties intended to permit two types of shoe stores in the shopping center—one being a lower priced merchandise store (Cohen), and the other to be a higher priced store (Hart). The trial court here did not place such a construction on the restrictive covenant in the present case, nor do we.

The judgment is affirmed.

All concur.