SLIP OPINION

Cite as 2015 Ark. App. 322

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-604

| | | |
|---|---|---|
| MYRTLE STEVENS | | **OPINION DELIVERED** **MAY 20, 2015** |
| | APPELLANT | APPEAL FROM THE VAN BUREN COUNTY CIRCUIT COURT [NO. CV2010-181-2] |
| V. | | |
| | | HONORABLE MICHAEL A. MAGGIO, JUDGE |
| SEECO, INC., ET AL. | | |
| | APPELLEES | AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Appellant Myrtle Stevens appeals from an order declaring the Hall family, appellees herein, to be the owners of certain mineral rights. The order also found that the Halls properly leased those rights to appellee SEECO, Inc. We affirm.[1]

The minerals are subsurface in forty acres located in the Southwest Quarter of the Southwest Quarter of Section 22, Township 11 North, Range 15 West, in Van Buren County. The property was acquired in 1904 by appellant's late grandfather, Joe C. Chandler. In 1930, Chandler and his wife executed a deed that conveyed all of the mineral interests in the property to W.E. Hall. Hall died in 1939, and his heirs, the Hall appellees, now claim the mineral rights by virtue of the 1930 deed.

---

[1] We previously dismissed this case for lack of a final order, *Stevens v. SEECO, Inc.*, 2012 Ark. App. 629, and ordered rebriefing. *Stevens v. SEECO, Inc.*, 2015 Ark. App. 3. Appellant has now obtained a final order and corrected the briefing deficiencies by filing a supplemental addendum.

SLIP OPINION

Appellant asserts ownership of the property and its minerals through intestate succession from her grandfather and father and conveyances from her siblings and others. She maintains that the 1930 mineral deed to W.E. Hall did not vest any mineral rights in Hall or his heirs because it was irregular in several respects, including: the spelling of the grantors' name as "Chandlier" rather than Chandler; the consideration being stated as "$80.00 or Eight Units of interest in Trust Contract" paid by "W.E. Hall Trustee," even though no trust was known to exist; and at least one of the Chandlers signing the deed using an "X" mark. Appellant also cites a handwritten notation along the left margin of the deed that reads, "Attested A.A. Cottrell, Clerk. I, W.E. Hall has [sic] this day released on this date 1/15–30. W.E. Hall, Trustee."

The present controversy arose after separate oil-and-gas leases had been executed on the subject property by appellant and the Hall family between 2004 and 2008—the Halls with SEECO or its predecessors, and appellant with Revard Petroleum. The competing leases caused SEECO to file a complaint in 2010 naming appellant and approximately eighty members of the Hall family as defendants. The complaint asked that SEECO be allowed to pay accruing oil-and-gas royalties into the court registry and that the court determine the royalties' legal owners. The Hall heirs duly pled their claims, citing the 1930 mineral deed to W.E. Hall as proof of their ownership. Appellant asserted that the 1930 Hall deed was either defective or waived any rights W. E. Hall may have acquired in the minerals and, therefore, she was the owner of the mineral interests.

2

Both sides filed motions for summary judgment to join the issues. Following a hearing, the court ruled that the 1930 mineral deed to W.E. Hall was valid:

> This Court believes the deed conveying the subject minerals to W.E. Hall from [the Chandlers] could be considered ambiguous. The deed must be construed most strongly against the grantors; also, the actions and the conduct of W.E. Hall and his heirs must be given considerable weight. Because the Hall heirs' actions demonstrate their continued belief that they were the rightful owners of the subject minerals, this Court finds that the deed conveying an interest in the subject minerals to W.E. Hall is valid.

The court also found that the handwritten release language in the margin of the W.E. Hall deed was ineffective and did not cause ownership of the minerals to revert to the Chandlers. Accordingly, the court declared the Hall heirs to be the owners of the mineral rights. This appeal followed, and appellant presents two arguments for reversal.

First, appellant argues that the circuit court erred in construing the 1930 mineral deed against the Chandlers rather than against W.E. Hall, who she contends filled out the deed form. *See generally Gibson v. Pickett*, 256 Ark. 1035, 512 S.W.2d 532 (1974); *Deltic Timber Corp. v. Newland*, 2010 Ark. App. 276, 374 S.W.3d 261 (recognizing that, as a rule of last resort when interpreting an ambiguous instrument, the instrument is construed most strongly against the party who prepared it, or against the grantor). We see no reversible error. Regardless of whether the deed was construed most strongly against the grantors or the grantee, the fact remains that the deed contained all of the necessary terms for a valid mineral conveyance. Appellant does not clearly identify any legal basis for setting aside or voiding the deed, nor does she argue that the deed's handwritten "release" language caused the minerals to revert back to the Chandlers. In fact, she admits that the formalities required to effect a release may be lacking. *See generally Helms v. Vaughn*, 250 Ark. 828, 467 S.W.2d 399 (1971).

3

In short, appellant has not persuaded us that the circuit court's decision to construe the deed most strongly against the Chandlers affected the terms or validity of the deed. Appellant therefore has not met her burden to demonstrate reversible error. *See Gilliam v. Gilliam*, 2010 Ark. App. 137, 374 S.W.3d 108.

For her second argument, appellant challenges the circuit court's statement that the actions of the Hall heirs "demonstrate their continued belief that they were the rightful owners of the subject minerals." Appellant argues that, to the contrary, the Halls' actions reveal that they abandoned the mineral interests. She cites the failure of W.E. Hall or his heirs to pay taxes on the mineral interests, which resulted in two unsuccessful attempts by the State to sell the interests to third persons; the lack of any recorded activity by the Halls involving the minerals for more than seventy years after the 1930 deed; and the fact that certain probate records, signed by some of the Hall heirs, denied that W.E. Hall's widow held any real–property interest at the time of her death in 1987. Again, we see no ground for reversal.

One cannot divest himself of title to real property by abandonment alone. There must be an intent by the owner to abandon his claim. *Helms, supra*. Further, that intent must be accompanied by circumstances of estoppel and limitation, if the abandonment is not by a legal deed of conveyance. *Id*. In her arguments to the circuit court, appellant briefly mentioned the concept of abandonment, but the argument was never developed, particularly with regard to the estoppel element. Our appellate courts will not entertain arguments that were not fully developed in the circuit court. *Jenkins v. Dale E. & Betty Fogerty Joint Revocable Trust*, 2011 Ark. App. 720, 386 S.W.3d 704.

SLIP OPINION

Moreover, the circuit court did not rule on the abandonment/estoppel issue. Even where a party mentions a particular theory, if he does not bring it to the court's attention for a ruling, the matter is waived on appeal. *Britton v. Floyd*, 293 Ark. 397, 738 S.W.2d 408 (1987).

For these reasons, we affirm the circuit court's order.

Affirmed.

ABRAMSON, J., agrees.

HARRISON, J., concurs.

**BRANDON J. HARRISON, Judge, concurring.** In this case that involves competing claims of ownership to oil and gas rights in a piece of land, Myrtle Stevens is the undisputed owner of the surface rights; the Hall heirs are the purported owners of the oil and gas rights. The issue is whether the 1930 deed from the Chandlers to W.E. Hall was a valid conveyance of the entire mineral interest. I agree with the circuit court's decision that the 1930 deed conveyed the entire mineral interest but disagree that the deed was ambiguous. While I agree to affirm the circuit court's ultimate disposition of the case, I would do so along a slightly different line than have my colleagues.

Whether a deed is ambiguous is a matter of law that we review de novo. *Deltic Timber Corp. v. Newland*, 2010 Ark. App. 276, at 8, 374 S.W.3d 261, 266. The basic rule when construing deeds is to implement the grantor's intent, as expressed by the deed's language, when doing so is not contrary to settled principles of law. *Barton Land Servs., Inc. v. SEECO, Inc.*, 2013 Ark. 231, at 7, 428 S.W.3d 430, 435. We gather the parties' intentions from the

deed as a whole, not from some particular clause alone. *Id.* To this end, every part of the deed should be harmonized and reconciled so that, as the cases put it, "all may stand together and none be rejected." *Id.* (citing W*ynn v. Sklar & Phillips Oil Co.*, 254 Ark. 332, 493 S.W.2d 439 (1973)). We will not resort to rules of construction when a deed is clear and unambiguous; rules or canons of construction are used only when a deed's language is ambiguous, uncertain, or doubtful. *Id.*

Here, Stevens argues that the circuit court erred when it construed the deed against Chandler (the grantor) instead of against the person who purportedly prepared the deed: W.E. Hall (the grantee). A deed may be construed against the party who prepared it, or against the grantor, only if the deed is ambiguous and, more importantly, only as a last resort to resolve the ambiguity. *See Gibson v. Pickett*, 256 Ark. 1035, 1040, 512 S.W.2d 532, 536 (1974); *Deltic Timber*, *supra* (same). Because the deed in play here is not ambiguous when considered as a whole, there is no legal reason to construe the deed against any party.

Stevens attacks the validity of the 1930 deed in three primary ways: (1) the Chandlers' name is misspelled as "Chandlier" at places in the deed; (2) consideration for the conveyance was $80 or shares in an unidentified trust—and the deed states that consideration was paid by W.E. Hall, Trustee—but the grantee is simply W.E. Hall; and (3) at least one of the Chandlers signed the deed by a mark ("X") rather than by signature. To prevail and set the mineral deed aside, she must have produced "clear, cogent and convincing" evidence. *Aberdeen Oil Co. v. Goucher*, 235 Ark. 787, 790, 362 S.W.2d 20, 21 (1962).

Stevens's arguments do not persuade. I address her main points in turn.

1. *The Chandlers' name is misspelled as "Chandlier" throughout.* A valid deed must have competent parties who are identifiable, and an adequate description of the subject matter; valid consideration; words that effectively express a transfer or grant; and a formal execution and delivery. *Harrison v. Loyd*, 87 Ark. App. 356, 364, 192 S.W.3d 257, 262 (2004). The misspelling of the Chandlers' name is not fatal to the deed because the deed as a whole adequately names the grantor and the grantee. *See Treece v. Treece*, 212 Ark. 294, 298, 205 S.W.2d 711, 713 (1947); *see also* 4 Tiffany Real Prop. § 967 (3d ed. 2000) ("It is sufficient, however, if the name as given is sufficient to enable the grantor to be identified, and the fact that his name as it appears in the instrument differs from his actual name, or from the name signed thereto, does not invalidate the conveyance."). The 1904 patent deed referred to "Joe C. Chandler" but the deed being attacked in this appeal recited "J.C. Chandlier." The difference between the two names is not fatal because the initials "J.C." match the first and middle initials used in the first patent deed "Joe C.". Furthermore, the last names, phonetically speaking, are virtually identical. *See McReynolds v. First Nat'l Bank*, 156 Ark. 291, 245 S.W. 819 (1922).

2. *Consideration was $80 or shares in an unidentified trust and the deed states that consideration was paid by W.E. Hall, Trustee, but the grantee was W.E. Hall.* An alleged lack of consideration, standing alone, does not void a deed. *Luther v. Bonner*, 203 Ark. 848, 848, 159 S.W.2d 454, 457 (1942) ("A mere inadequacy of consideration is not sufficient to set aside deeds without accompanying acts of fraud or deception."). The consideration for the 1930 deed may have been shares in a trust, but that recital is not in and of itself a legal basis to set the deed aside.

And Stevens did not present evidence to the circuit court—much less "clear, cogent and convincing" evidence—that a trust was created by the deed or that W.E. Hall had a trust estate. *See Griffin v. Griffin*, 200 Ark. 794, 794, 141 S.W.2d 16, 20 (1940) ("Courts are reluctant—and should be—to impress trusts upon lands conveyed by deeds . . ."). Simply put, the word "Trustee" is legally superfluous in this case.

3. *At least one of the Chandlers signed the 1930 deed by a mark ("X") rather than by signature.* One is bound by whatever he uses as a substitute for his name. *Walker v. Emrich*, 212 Ark. 598, 602, 206 S.W.2d 769, 769 (1947). A deed may be effective if signed by a properly witnessed mark. *Aberdeen Oil Co. v. Goucher*, 235 Ark. 787, 791, 362 S.W.2d 20, 22 (1962). So the presence of a mark in lieu of a signature, in this case, is not a sufficient reason to void the deed.

Stevens, I'll also note, does not challenge other parts of the deed, its delivery, or whether it was properly recorded. She alleges no fraud or adverse possession. Stevens also concedes, as my colleagues point out, that the handwritten "release" language written on the side of the deed lacks the necessary formalities to unwind the conveyance.

My colleagues cite *Helms v. Vaughn*, 250 Ark. 828, 467 S.W.2d 399 (1971), as they briefly mention the abandonment-of-mineral-rights concept. Even if Stevens sufficiently raised her abandonment argument in circuit court, I agree that Stevens did not obtain a ruling on the issue. But it is still worth noting here that under what circumstances, if any, oil and gas rights may be abandoned is an issue that arguably remains unanswered in Arkansas.

The supreme court in *Helms* did not squarely decide the abandonment issue mentioned in that case. And in *Bodcaw Lumber Co. v. Goode*, 254 S.W. 345 (Ark. 1923), the supreme court held that an oil and gas mineral right is an estate in the oil and gas in place, with the holder of the oil and gas having a present right of possession in perpetuity. A logical extension of the court's reasoning in *Bodcaw*, therefore, seems to be that oil and gas rights cannot be abandoned after the mineral estate has been severed from the surface estate. In fact, my research has not uncovered one Arkansas case where an appellate court has declared an owner's mineral rights to have been abandoned. Adverse possession appears in some cases and the commentary, but not "abandonment." *See, e.g.*, Thomas A. Daily & W. Christopher Barrier, *Well, Now, Ain't That Just Fugacious!: A Basic Primer on Arkansas Oil and Gas Law*, 29 U. Ark. Little Rock L. Rev. 211 (2007) (Fugacious I); Thomas A. Daily & W. Christopher Barrier, *Still Fugacious After All These Years: A Sequel to the Basic Primer on Arkansas Oil and Gas Law*, 35 U. Ark. Little Rock L. Rev. 357 (2013) (Fugacious II) (The authors do not address the concept of abandonment in either article; only adverse possession is covered. Nor do the authors indicate that adverse possession is legally synonymous with abandonment.). While some states have statutes or regulations that address how to determine who owns mineral rights that have not been exercised in years, Arkansas apparently has no such mechanism. The point here is merely a cautionary one: this case should not be read as making any statement on whether, or how, one may "abandon" oil and gas rights in Arkansas.

★ ★ ★ ★

9

The 1930 W.E. Hall deed conveyed all the mineral interest that Joe C. Chandler owned; and that deed was delivered and recorded before Stevens's 1947 deed. Stevens has, furthermore, presented no convincing evidence to void the 1930 deed. On this case's facts, the Hall heirs were entitled to summary judgment as a matter of law. Because I agree with the circuit court's ultimate decision that the property's mineral interest was vested in the Hall heirs, I respectfully concur in this appeal's disposition.

*Kent Tester, P.A.*, by: *Kent Tester*, for appellant.

*Daily & Woods, P.L.L.C.*, by: *Robert R. Briggs*, for appellee.